CITY OF LUCAS, Appellant,

v.

NORTH TEXAS MUNICIPAL WATER DISTRICT, City of Plano, Texas, City of Richardson, Texas, City of Allen, Texas, City of McKinney, Texas, Appellees.

No. 05–85–00399–CV.

Court of Appeals of Texas, Dallas.

Sept. 17, 1986.

Supplemental Opinion Dec. 19, 1986.

Rehearing Denied Feb. 18, 1987.

Earl F. Hale, Robert R. Ries, Carrington, Coleman, Sloman & Blumenthal, Dallas, for appellant.

John R. Stooksberry, Boyd, Veigel, Gay & McCall, Inc., McKinney, for appellees.

Before AKIN, STEWART and HOLLINGSWORTH, JJ.

## ON MOTION FOR REHEARING

AKIN, Justice:

On motion for rehearing, the court withdraws its former opinion and substitutes this one. Appellees North Texas Municipal Water District (the "District"), City of Plano, City of Richardson, City of Allen, and City of McKinney, sought to construct and operate a wastewater treatment project on a 403–acre tract of land in Collin County. The tract lies partly within the corporate limits of the City of Lucas (the "City") and partly within the City's extraterritorial jurisdiction.[1] However, the 75 acres on which the main treatment plan is to be built, and with which we are primarily concerned, lie wholly within the City's extraterritorial jurisdiction. The sewage that is to be treated will be brought into the plant through 60–inch pipelines, known as "interceptor lines," which will pass through the City's corporate limits.

The City sued appellees for declaratory and injunctive relief to prevent appellees from constructing and operating the wastewater treatment project without (1) obtaining the consent of the City, where allegedly required, or (2) complying with allegedly applicable City ordinances. The District counterclaimed for a declaratory judgment that the ordinances in question were void and unenforceable as a matter of law or, in the alternative, that the ordinances were not enforceable against the District.

Trial was to the court, who concluded, *inter alia*, that various City ordinances were void and unenforceable insofar as they regulated activities within the City's extraterritorial jurisdiction, that certain other ordinances were void and unenforceable because they exceeded the power granted to a general-law city[2] under state law, and that all of the ordinances at issue were adopted for the sole purpose of selective enforcement against the District. Accordingly, the trial judge enjoined the City from enforcing, within its extraterritorial jurisdiction, the ordinances in question against the District. The judge further enjoined the City from enforcing, within its corporate limits, the ordinances against the District until such time as the City could demonstrate the good faith ability to enforce the ordinances as to the public at large.

1. The "extraterritorial jurisdiction" of the City of Lucas consists of "all the contiguous unincorporated area, not a part of any other city, within one-half (½) mile of the corporate limits of" the City. TEX.REV.CIV.STAT.ANN. art. 970a, 3.A(1) (Vernon 1963).

2. The City of Lucas is a general-law city.

On appeal, the City contends that the trial court erred: (1) in concluding that the District need not comply with any of the City's ordinances because of certain provisions of the Act of April 20, 1951, ch. 62, 1951 Tex.Gen.Laws 96, as amended by Act of April 30, 1975, ch. 90, § 1, sec. 27, 1975 Tex.Gen.Laws 238 (the "District Act"); (2) in concluding that certain ordinances were void and unenforceable insofar as they attempted to regulate activities within the City's extraterritorial jurisdiction; (3) in concluding that the City's subdivision-control ordinances were void and unenforceable because they exceeded the power granted to a general-law city under state law; (4) in concluding that the District was not subject to the City's subdivision regulations because the District had not subdivided any of its property located within the City's extraterritorial jurisdiction; (5) in concluding that the ordinances at issue were adopted for the sole purpose of selective enforcement against the District; (6) in permanently enjoining the City from enforcing, within its corporate limits, any of the ordinances in question against the District until such time as the City could demonstrate the good faith ability to enforce the ordinances as to the public at large; (7) in excluding evidence allegedly establishing that certain actions of the District were taken at meetings held in violation of the Open Meetings Act, TEX.REV.CIV.STAT. ANN. art. 6252–17 (Vernon Supp.1985); and (8) in awarding to the District from the City attorney's fees in the amount of $21,-709.23. We agree with some of the City's contentions.[3]

██ The City first contends that the trial court erred in concluding that the District need not comply with any of the City's ordinances because of certain provisions of the District Act. Section 27(a) of the District Act provides, in pertinent part:

In addition to all other powers, the district is authorized to purchase, construct, acquire, own, operate, maintain, repair,

improve, or extend inside and outside its boundaries, at any location whatsoever, in the sole discretion of the district, any and all works, improvements, facilities, plants, equipment, and appliances incident, helpful, or necessary to:

\*　\*　\*　\*　\*　\*

(2) collect, transport, process, treat, dispose of, and control all municipal, domestic, industrial, or communal waste whether in fluid, solid or composite state, including specifically the control, abatement, or reduction of all types of pollution; and it is hereby found and determined by the legislature that all of the aforesaid purposes are for the conservation and development of the natural resources of the state within the meaning of Article XVI, Section 59 of the Texas Constitution.

Section 27(*l*) of the District Act provides: *This section shall be wholly sufficient authority within itself for the issuance of the bonds, the execution of contracts, and the performance of the other acts and procedures authorized herein by the district,* and all cities, public agencies, and other political subdivisions, *without reference to any other law or any restrictions or limitations contained therein,* except as herein specifically provided; *and in any case to the extent of any conflict or inconsistency between any provisions of this section and any other provisions of law, this section shall prevail and control;* provided, however, that the district and all cities, public agencies, and other political subdivisions shall have the right to use the provisions of any other laws, not in conflict with the provisions hereof, to the extent convenient or necessary to carry out any power or authority, express or implied, granted by this section. [emphasis added]

The district argues essentially that the first clause[4] of section 27(*l*) provides that sec-

---

3. The City raises additional points of error which, in light of our disposition of this appeal, we need not address.

4. As the reader will observe, the entire body of section 27(*l*) is composed of but a single sentence. For purposes of analysis and discussion, we shall view section 27(*l*) as consisting of three clauses. The first and second clauses are

tion 27, in and of itself, authorizes the District to issue bonds, execute contracts, and perform various other acts in furtherance of its stated purposes *and* that no other law shall affect such actions of the District. We cannot agree with this interpretation. In our view, the first clause of section 27(*l*) provides only that section 27, without reference to any other law, furnishes sufficient authority for the District to issue bonds, execute contracts, and perform various other acts to effectuate its authorized purposes. Accordingly, we conclude that this clause alone does not relieve the District of the obligation to comply with the City's ordinances.

The second clause of section 27(*l*) provides that in the event of any conflict or inconsistency between the provisions of section 27 and any other provision of law, section 27 is controlling. The District argues that the City ordinances in question were adopted solely to prevent the District from constructing and operating the treatment plant and thus necessarily conflict with, or are inconsistent with, the first clause of section 27(*l*). The City asserts that reasonable regulations adopted merely in order to protect the health and welfare of the City's residents by insuring that the District's operations are conducted in a safe manner are not inconsistent with the District Act. We agree with the City's position and, accordingly, hold that reasonable regulations designed not to prevent the treatment plant's construction and operation but rather to provide for the health and welfare of the City's residents in connection with the plant's construction and operation, and which are otherwise authorized by law, do not conflict with, and are not inconsistent with, the provisions of the District Act.

The City also contends that its consent is required before the District can construct and operate the treatment plant within the City's corporate limits or within its extra-

territorial jurisdiction. We disagree with this contention for two reasons.

■ First, the plain language of section 27(a) of the District Act provides that the District may, in its "sole discretion," choose to locate or operate its facilities "at any location whatsoever." We have held that the City may, in order to protect the health and welfare of its residents, enact reasonable regulations to insure that the activities which the District chooses to undertake are safely conducted. Such regulations do not conflict with the District Act. On the other hand, requiring the District to obtain the City's consent before it could even undertake its activities would conflict with the District Act, which provides that it is authority within itself for certain specified activities.

Second, *City of Plano v. City of Allen,* 395 S.W.2d 927 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.), upon which the City heavily relies in support of its contention that its consent is required, does not control this case. In *Plano v. Allen,* we held that the Legislature did not intend to authorize one city to own and operate a sewage disposal plant within the city limits of another city without that city's consent. No statute similar to section 27(a) of the District Act was before the *Plano v. Allen* court. Indeed, the court indicated that, had such a statute existed, a different result would have been reached. 395 S.W.2d at 928.

The City maintains that the trial court erred in concluding that certain City ordinances were void and unenforceable insofar as they attempted to regulate activities within the City's extraterritorial jurisdiction. The ordinances in question are concerned with water and sewer systems, transportation of wastes and hazardous materials, and building and zoning.[5] The city asserts that the ordinances in question are authorized by article 1015, section 30 of the civil statutes and by section 26.177(b)(5) of the Water Code. We disagree with the City.

---

separated by the first semicolon. The second and third clauses are separated by the second semicolon.

**5.** Specifically, the ordinances in question are:

Ordinance numbers 9862 through 9872; Code sections 3–11 through 3–17, 6–25, 8–1 through 8–22, 9–1 through 9–6.

TEX.REV.CIV.STAT.ANN. art. 1015, § 30 (Vernon 1963) provides that the governing body of the city has the power [t]o provide, or cause to be provided, the city with water; to make, regulate and establish public wells, pumps and cisterns, hydrants and reservoirs in the streets or elsewhere *within said city or beyond the limits thereof,* for the extinguishment of fires and the convenience of the inhabitants, and to prevent the unnecessary waste of water. [emphasis added]

This statute authorizes a city to adopt ordinances, applicable both within the City's corporate limits and within its extraterritorial jurisdiction, designed to protect the public water supply. The City of Lucas has no public water supply. Therefore, this statute would not grant authority for the City to pass any of the ordinances in question.

■ TEX.WATER CODE ANN. 26.-177(b)(5) (Vernon Supp.1985) provides:

(b) The water pollution control and abatement program of a city shall encompass the entire city and *may include areas within its extraterritorial jurisdiction* which in the judgment of the city should be included to enable the city to achieve the objectives of the city for the area within its territorial jurisdiction. The city shall include in the program the services and functions which, in the judgment of the city or as maybe reasonably required by the commission, will provide effective water pollution control and abatement for the city, including the following services and functions:

\*  \*  \*  \*  \*  \*

(5) the development and execution of reasonable and realistic plans for controlling and abating pollution or potential pollution resulting from generalized discharges of waste *which are not traceable to a specific source,* such as storm sewer discharges and urban runoff from rainwater. [emphasis added]

This statute authorizes a City to enact ordinances, applicable both within its corporate limits and within its extraterritorial jurisdiction designed to control and abate actual or potential water pollution resulting from generalized discharges of waste and not traceable to specific source, such as urban runoff from rainwater. We hold that the wastewater treatment plant is a specific source. *See City of Austin v. Jamail,* 662 S.W.2d 779, 782 (Tex.App.—Austin 1983, writ ref'd). Consequently, section 26.-177(b)(5) provides no authority to the City to attempt to relate outside their corporate boundaries.

■ Next, the City contends that the trial court erred in concluding: (1) that the City's subdivision-control ordinances were void and unenforceable because they exceeded the power granted to a general-law city under state law; and (2) that the District was not subject to the City's subdivision regulations because the District had not subdivided any of its property located within the City's extraterritorial jurisdiction. We agree with the City.

TEX.REV.CIV.STAT.ANN. art. 970a, § 4 (Vernon 1963) provides, in pertinent part: "The governing body of any city may extend by ordinance to all of the area under its extraterritorial jurisdiction the application of such city's ordinance establishing rules and regulations governing plats and the subdivision of land." Thus, the City is authorized by article 970a to extend the applicability of its subdivision control ordinances to its extraterritorial jurisdiction. *City of Waco v. Earhart,* 511 S.W.2d 549, 550 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.).

■ Furthermore, we hold that the trial court erred in concluding that the District had not subdivided any of its property located within the City's extraterritorial jurisdiction. The undisputed evidence showed that the main treatment plant is to be built on 75 acres of the 403–acre tract owned by the District. The 75–acre site was paid for with funds from the District's wastewater system, while the remaining acreage was paid for with funds from the District's solid waste system. The District intends to fence the 75–acre site and is arranging for electrical service to the 75–acre site but not the remaining acreage. All of the Dis-

trict's plans for the project concern only the 75–acre site.

It has been held that a "subdivision" of property, "may refer simply to the act of partition itself, regardless of whether an actual transfer of ownership—or even an intended transfer of ownership—occurs." *City of Weslaco v. Carpenter*, 694 S.W.2d 601, 603 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). The key point is that a "subdivision" of land suggests development. *Id.* The District has set aside, and will fence, a 75–acre tract to be developed. This tract lies wholly within the City's extraterritorial jurisdiction. It is clear, therefore, that the District "subdivided" its property located within the City's extraterritorial jurisdiction.

The City also contends that the trial court erred in finding that the District was not subject to the City's subdivision regulations because the City has defined a "subdivision" more broadly than it is defined in TEX.REV.CIV.STAT.ANN. art. 974a, § 1 (Vernon 1963).[6] Although we are inclined to agree with the City, we need not address this contention. Section 4 of article 970a authorizes the City to extend the applicability of its subdivision ordinances to its extraterritorial jurisdiction. Because the land in question is within one-half mile of the City's corporate limits and, therefore, is within the scope of article 970a, we need not decide the applicability of article 974a.

The City argues that the trial court erred in concluding that all of the ordinances at issue were adopted for the sole purpose of selective enforcement against the District and not for the protection of the general citizenry of the City. Specifically, the City asserts that there was no evidence to support such a conclusion. Our review of the record compels us to agree with the City. The City's mayor testified that the City intended to enforce the ordinances uniformly. No contradictory evidence was adduced at trial. Accordingly, we hold that the trial court erred in concluding that all of the ordinances at issue were adopted for the sole purpose of selective enforcement against the District.

The City next maintains that the trial court erred in permanently enjoining the City from enforcing, within its corporate limits, any of the ordinances in question against the District until such time as the City could demonstrate the good-faith ability to enforce the ordinances as to the public at large. The trial court concluded that, in order to demonstrate its "good faith ability" to enforce its ordinances, the City would be required "at a very minimum, to employ qualified experienced personnel in water pollution control, record keeping personnel, police personnel, fire personnel, provide a weight station and make available forms and permits for compliance." The City also asserts that the trial court erred in reaching this conclusion.

We agree with the City's contentions. As we have stated, there was no evidence

6. Section 1 of article 974a provides:
   Hereafter every owner of any tract of land situated within the corporate limits, or within five miles of the corporate limits of any city in the State of Texas, who may hereafter divide the same in two or more parts for the purpose of laying out any subdivision of any tract of land or any addition to any town or city, or for laying out suburban lots or building lots, or any lots, and streets, alleys or parks or other portions intended for public use, or the use of purchasers or owners of lots fronting thereon or adjacent thereto, shall cause a plat to be thereof which shall accurately describe all of said subdivision or addition by metes and bounds and locate the same with respect to an original corner of the original survey of which it is a part, giving the dimensions thereof of said subdivision of ad-

dition, and dimensions of all streets, alleys, squares, parks or other portions of same intended to be dedicated to public use, or for the use of purchasers or owners of lots fronting thereon or adjacent thereto; provided, however, that no plat of any subdivision of any tract of land or any addition to any town or city shall be recorded unless the same shall accurately describe all of said subdivision or addition by metes and bounds and locate the same with respect to an original corner of the original survey of which it is a part giving the dimensions thereof of said subdivision or addition, and dimensions of all streets, alleys, squares, parks or other portions of same intended to be dedicated to public use, or for the use of purchasers or owners of lots fronting thereon or adjacent thereto.

adduced at trial establishing that the City intended to selectively enforce its ordinances against the District. Furthermore, we are unaware of any rule of law whereby the validity of a municipal ordinance, or the authority of a City to enforce it, turns on whether the city has a full complement of enforcement mechanisms in place prior to its attempted enforcement of the ordinance. Accordingly, we hold that the trial court erred in enjoining the City from enforcing its ordinances against the District until the City demonstrates its good-faith ability to enforce its ordinances as to the public at large.

■ Next, the City argues that there is no evidence to support the trial court finding that the treatment plant will be entirely outside city limits but solely within the City's extraterritorial jurisdiction. We cannot agree with the City's assertion. The trial court found that while a portion of the 400 acres of land owned by the district is located within the city limits, none of the 75–acres upon which the plant is to be constructed is within the city limits. This finding is supported by the evidence; in fact, it is undisputed that the plant itself will be built entirely outside the city limits but within the extraterritorial jurisdiction of the city. We do note that some of the underground pipes connected to the plant will be run through the city of Lucas itself. But the plant itself, as found by the trial court, will be entirely outside the city limits.

■ The City next contends that the trial court erred in failing to grant judgment to the City because the treatment plant would compel the City to secure sewer services from the District in violation of the District Act. In this respect, the City claims that interceptor lines necessary to the treatment plant would physically interfere with any sewer lines that the City might "desire to lay." The City argues that this would prevent it from laying sewer lines and force it to secure sewer services from the District. The City asserts that this prospect entitled it to judgment under the provision of the

District Act declaring that "[t]his Act does not compel any city ... to secure ... sewer service ... from the District except pursuant to contracts voluntarily executed," section 27(m), *Act of April 30, 1975*, ch. 90, 1975 Tex.Gen.Laws 238. We cannot agree with the City's contention.

The City failed to introduce any evidence that the lines of the City and the lines of the District could not physically co-exist. At trial the City admitted that no city sewer lines exist. The Mayor of the City testified that, in adopting the master plan for development of the city: "It was the intent at the time by the majority of the residents that no plan or taxes be adopted for sewer...." Consequently, the City failed to prove that there is even the potential for conflict between lines of the City and lines of the District. Since the City failed to prove that the treatment plant would interfere with City sewer service, it failed to prove that it would be compelled to secure sewer services from the District. Thus, the trial court did not err in failing to grant judgment on that ground.

The City contends that the trial court erred in excluding evidence which allegedly established that certain actions of the District were taken at meetings held in violation of the Open Meetings Act. In excluding this evidence, the trial court found that the issues raised by the City regarding the District's alleged violations of the Open Meetings Act were issues "which were fully litigated, or with the use of reasonable diligence, could have been fully litigated" in the prior bond validation suit between the parties.[7] Accordingly, the trial court concluded that the issues raised by the City in the instant case concerning the District's alleged violations of the Open Meetings Act were barred by res judicata.

■ Under the doctrine of res judicata, a final judgment settles not only issues actually litigated, but also any issues that, through the exercise of reasonable diligence, could have been litigated. *Segrest v. Segrest*, 649 S.W.2d 610, 612 (Tex.

---

7. The District had earlier sought a declaratory judgment action as to its authority to issue

bonds in order to finance construction of the waste water treatment plant.

1983); *Gilbert v. Fireside Enterprises, Inc.*, 611 S.W.2d 869, 872 (Tex.Civ.App.— Dallas 1980, no writ). In the bond validation suit, the City adduced evidence regarding various actions of the District taken at meetings allegedly held in violation of the Open Meetings Act. Some of these actions concerned contracts relating to the construction of the treatment plant. In the case at bar, the City sought to have these actions declared null and void due to the alleged Open Meetings Act violations. The trial court refused to admit evidence [8] concerning this claim on the ground that the claim was barred by res judicata. We hold that the trial court did not err in so doing.

The City contends that the trial court erred in awarding to the District from the City attorney's fees in the amount of $21,-709.23. We agree. We conclude that, in light of our disposition of this appeal, such an award was error.

Because the trial court erred in holding that all of the City ordinances were void and unenforceable we reverse the judgment and remand the cause to the trial court for a determination of the reasonableness of the ordinances which the City had authority to pass.

The parties have argued in their motions for rehearing that it is error to remand this case to the trial court for a determination of the reasonableness of each ordinance. They contend that we must rule on the reasonableness of each ordinance because each presents an issue of law for the court. We acknowledge that the question of whether an ordinance is reasonable or not is a question of law for the court. *Moncrief v. Tate*, 593 S.W.2d 312, 314 (Tex. 1980); *City of University Park v. Hoblitzelle*, 150 S.W.2d 169, 172 (Tex.Civ.App.— Dallas 1981, writ dism'd), *cert. denied*, 315 U.S. 781, 62 S.Ct. 806, 86 L.Ed. 1188. Nevertheless, the question of whether to render a decision or remand the cause is not answered by the well-established principle of law quoted above. Ruling upon an ordinance does not involve an abstract issue of law but an issue of law predicated upon the facts of the individual case. *See City of Brookside Village v. Comeau*, 633 S.W.2d 790 (Tex.1982). In passing on the reasonableness of an ordinance, the standard of evaluation is whether the municipality has abused its discretion in enacting the ordinance, which must be presumed valid until the facts show abuse. *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex.1971).

The relevant facts include the evils sought to be remedied, the effect of the ordinance on citizens, and the effect upon the city should they not be applied. To properly analyze the ordinance, the record must reflect all of the factual circumstances including prior and subsequent actions of the legislative body, and the public policy of the State with which the ordinance allegedly conflicts.

Our holdings on the merits establish that the parties and trial court misconceived the legal issues involved and the legal rights of the parties. As a result, neither party fully developed all of the *facts* necessary for the trier of law to determine the reasonableness of the ordinances. Consequently, in the interest of justice we must remand this cause to the trial court. *Williams v. Safety Casualty Co.*, 129 Tex. 184, 102 S.W.2d 178, 179–80 (1937).

In order to clarify the task of the trial court upon remand, we give the following guidance. First, the ordinances and code sections which purport to regulate activities within the City's extraterritorial jurisdiction are void except for the zoning ordinances authorized by article 970a, § 4. As to the ordinances and code sections that regulate activities within the City limits, and the zoning ordinances authorized by article 970a, § 4 the trial court should proceed as follows.

After the parties have fully developed the relevant facts, the trial court should determine the reasonableness of the ordinances and code sections as applied to the

---

8. The parties agreed that the relevant evidence from the bond validation suit would serve as the bill of exceptions in the instant case.

construction and operation of the treatment plant. The trial court should decide whether the ordinances are reasonable under the standard of clear abuse of discretion enunciated in *Hunt v. City of San Antonio,* 462 S.W.2d 536 (Tex.1971). In making that decision, the trial court should consider all of the factual circumstances. If the ordinances are found to be reasonable under that standard, then the trial court should determine whether the ordinances and code sections would so hinder, prevent or conflict with the construction and operation of the treatment plant as to make the District unable to achieve the purpose expressed in its permit from the Texas Water Commission.

■ Some of the ordinances, as the District contends, so clearly conflict with the District's authority as to be unenforceable as a matter of law. In this respect certain ordinances that purport to grant authority to the City to prohibit the construction of the wastewater treatment facility or which, under certain circumstances, purport to prohibit such facility outright, are unreasonable and unenforceable as a matter of law.

Other code sections set out certain prohibitions that would conflict with the District's construction or operation of the wastewater treatment facility should they be enforced against the District. Section 10–9 prohibits any such facility within specified distances from natural water courses, wells, public buildings or human habitations. Section 10–12 proscribes any activities that will cause noxious, hazardous or offensive emissions. Finally, section 10–19 prohibits any diversion of any natural stream. By purporting to deny the power of the District to construct or operate its facility within these parameters, rather than by merely regulating the methods and means of that construction and operation, these code sections are unenforceable as a matter of law.

The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

Before AKIN, STEWART and ROWE[1], JJ.

## SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

AKIN, Justice.

After we withdrew our original opinion and on rehearing substituted a new opinion, both parties have filed second motions for rehearing. They request that we enumerate those ordinances and sections of the City's Code which are unenforceable against the District as a matter of law. This request is well-taken. The City further requests that we reconsider our ruling that TEX.REV.CIV.STAT.ANN. art. 1015 provides no statutory basis for the City's exercise of extraterritorial jurisdiction. Upon reconsideration, we agree that article 1015 provides statutory support for extension of the City's ordinances and Code into its extraterritorial jurisdiction. The District contends that we erred in failing to hold that only Chapter 6 of the City's Code could be extended into the City's extraterritorial jurisdiction pursuant to TEX.REV. CIV.STAT.ANN. art. 970a; in failing to hold that Chapters 3 and 9 of the City's Code were not enforceable in the City's extraterritorial jurisdiction; in failing to hold that Chapter 6 was not applicable herein because it is a subdivision control ordinance and because we are bound by the trial court's finding that the District did not subdivide any of its property; in failing to uphold the trial court's judgment because the City filed no Bill of Exceptions in the record; in failing to hold that certain sections of the Code were unenforceable because they impermissibly define certain acts as common nuisances; and in failing to hold that certain sections of the code were unenforceable because they are in conflict with state law. We agree only with respect to the Code sections defining

1. Justice Gordon Rowe succeeded Justice Cynthia Hollingsworth at the expiration of her term on December 3, 1986.

common nuisances and disagree with respect to the other contentions.

The District derives statutory authority to build and operate the wastewater treatment plant in issue in this suit from the Act of April 20, 1951, ch. 62, 1951 Tex.Gen. Laws 96, as amended by Act of April 30, 1975, ch. 90, section 27, 1975 Tex.Gen.Laws 238 (the "District Act"). Section 27 of the Act states that to the extent of any conflict or inconsistency between the section and any other law, the section shall prevail and control; provided, however, that all cities shall have the right to use any other laws not in conflict with the provisions of the Act. Consequently, the Act does not excuse the District of all obligations to comply with the City's ordinances and Code sections, but does render unenforceable as a matter of law those ordinances and sections which purport to deny or restrict the District's right to build or operate the plant, rather than to regulate the methods and means of such building and operation.

■ Certain of the sections of the City's Code, and the corresponding ordinances, provide for the assessment of criminal penalties and fines for acts in violation of the provisions of the Code. Such sections include 3–8, 3–9, 5–27, 6–41, 7–27, 7–28, 8–21, 9–6, 10–3, 10–7, 10–7.2, 10–10, 10–13, 10–18, 10–21, and 10–29. The assessment of criminal penalties and levying of fines against the District or its officers would conflict with, and be inconsistent with, the District Act. Consequently, these sections are unenforceable against the District as a matter of law.

■ Similarly, certain sections require that individuals, developers, and companies building certain types of improvements within the City and its extraterritorial jurisdiction post bonds or pay fees with respect to their activities. Section 6–23 requires posting of a maintenance bond with the City of 10% of the total value of any subdivision built in the City or its extraterritorial jurisdiction. Sections 7–24 and 7–29 require posting of a maintenance bond for any water system built within the City. Section 8–14 and 8–15 respectively require payment of a fee equal to 1%, and posting of a bond equal to the entire amount, of the projected cost of any sewer system to be built within the City or its extraterritorial jurisdiction. Section 10–23 requires payment of a fee of $300 per vehicle from any political subdivision which intends to use commercial vehicles on the roads within the City or its extraterritorial jurisdiction. The requirement of fees and bonds from the District would conflict with, and be inconsistent with, the District Act and such requirements are not enforceable against the District.

■ Our holding that the District Act insulates the District from the City's ordinances concerning criminal penalties, fines, fees and bonds does not conflict with our prior holding that the District remains subject to reasonable regulation by the City. The provision of the Act that it shall control over conflicting or inconsistent laws, when read together with the balance of the Act, indicates that the provision was intended to prevent any laws which directly inhibit the District's activities from being enforced against the District. However, nothing in the act convinces us that the Legislature intended such a momentous departure from prior law as would be entailed by creation of a political subdivision that was entirely immune from any law that would even indirectly affect its activities. Accordingly, the Act does not prohibit any indirect or incidental effect upon District activities caused by compliance with such laws as, inter alia, environmental protection laws, laws relating to administrative procedures, meetings and records, and laws enforcing equal rights without regard to race or sex. Criminal penalties, fines, fees, and bonds directly assessed upon the work of the District have a direct effect upon that work and cannot be upheld. Regulations which indirectly affect the work of the District by requiring it to conduct that work in a manner which achieves the District's goals while protecting the City's interests may be applied to the District.

■ Ordinances and Code sections which purport to prohibit the District from building or operating its plant should such activities come within the scope of such

ordinances and sections, or which purport to grant discretion to City officials to prohibit such activities directly affect the District's ability to achieve its goals. Consequently, the sections specified in our substituted opinion, 10–9, 10–12, and 10–19 are inapplicable to the District. Similarly, section 3–3, confers authority on the City Council to deny a building permit should they conclude it would endanger the citizenry. Section 8–17 allows the City Council to disapprove a proposed sewer system should it conclude that such system would not benefit the City or would endanger its citizenry. Section 9–4(H) prohibits construction of any sewer system or wastewater treatment plant within 2,000 feet of Lake Lavon. Chapter 9, as a whole, sets up a comprehensive zoning plan and prohibits any use of land which does not conform to the uses allowed within its particular zoning category. None of these Code sections may be enforced against the District.

■ In our original opinion, we held that TEX.REV.CIV.STAT.ANN., art. 1015 granted statutory authority for the City to extend regulations to its extra-territorial jurisdiction which were designed to protect its public water supply. In our substituted opinion, we concluded that this statute was not available to the City inasmuch as the City had no public water supply. The City now points to the trial court's unchallenged finding of fact that its citizens obtain their drinking water from the City and it buys the water from the District. Where a city enters into a contract with a district to supply water to its citizens, that water constitutes a public water supply. *See* TEX.REV.CIV.STAT.ANN., art. 1109e. Consequently, the City has a public water supply and those of its ordinances designed to protect its water supply may be extended into its extraterritorial jurisdiction.

The District contends that only Chapter 6 of the City's Code is authorized by article 970a and that, inasmuch as we have held that it provides the only statutory basis for the City's authority in its extraterritorial jurisdiction, all other sections of the Code, particularly Chapters 3 and 9, cannot be enforced against the District. Since we have held that a restrictive zoning category may not be applied by the City against the District, this argument with respect to Chapter 9 is moot. With respect to Chapter 3, we do not agree with the District.

Chapter 3 requires a building permit prior to construction within the city limits or within the extraterritorial jurisdiction of the City. It also adopts the Uniform Building Code, Uniform Electrical Code, Uniform Mechanical Code and Uniform Plumbing Code. These codes regulate, inter alia, connections between a main building and garage, permissible types of shingles used to roof a building, fire extinguisher requirements, permissible piping materials, and required safeguards for electrical systems.

■ Article 970a confers authority upon a city to extend its subdivision ordinances into its extraterritorial jurisdiction. In determining whether jurisdiction under article 970a has attached, a subdivision may be simply a division of a tract of land into smaller parts. *City of Weslaco v. Carpenter*, 694 S.W.2d 601 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *Black's Law Dictionary* (1979). However, use of the term is not restricted to the division itself but also encompasses the development of the divided tracts. *City of Weslaco*, 694 S.W.2d at 603. Consequently, ordinances regulating development, such as those specifying design, construction and maintenance standards, may be extended by a city into its extraterritorial jurisdiction. *City of Weslaco*, 694 S.W.2d at 602–603. *See also City of Corpus Christi v. Unitarian Church*, 436 S.W.2d 923 (Tex.Civ.App.—Corpus Christi 1968, ref'd n.r.e.).

■ Moreover, a municipal corporation may exercise both those powers expressly granted by a statute and those necessarily or fairly implied in such grant, *Foster v. City of Waco*, 113 Tex. 352, 255 S.W. 1104, 1105 (1923). *City of Corpus Christi*, 436 S.W.2d at 929. Were we to hold that building standards are not contemplated by article 970a, we would be left with a statute that grants authority over the laying out of streets, alleys and lot boundaries, but precludes authority over

the most important part of a subdivision. Consequently, we conclude that the power over subdivisions conferred by article 970a necessarily or fairly implies a right to issue regulations governing construction of housing, buildings, and the components thereof.

Nevertheless, the District contends that article 970a is not available to the City in this case because the trial court found that the District did not subdivide its property and the City failed to challenge this finding by a point of error in its brief. The District misstates the record in that the City's Point of Error 11 clearly challenges this finding of the trial court.

■ The District objects to portions of our substituted opinion which held that there was no evidence to support certain findings of the trial court, contending that we are, in any event, bound by the trial court's findings due to the failure of the City to propound a Bill of Exceptions complaining of such findings. We do not agree. The City made timely requests of its own proposed findings of fact, objecting to those of the trial court. Moreover, a statement of facts has been filed among the records of this cause. Consequently, we are not necessarily bound by the findings of the trial court. *Swanson v. Swanson,* 148 Tex. 600, 228 S.W.2d 156 (1950).

■ The District contends that sections 3–9, 6–13.1, 6–41, 8–22, 10–7, 10–13, and 10–29 are invalid in that they attempt to define certain acts as common nuisances. A municipal ordinance may not declare acts to be common nuisances unless such acts were held to be nuisances at common law or unless they constitute nuisances per se. *Otten v. Town of China Grove,* 660 S.W.2d 565 (Tex.App.—San Antonio 1983, writ dism'd). Further, such sections would clearly conflict or be inconsistent with the District Act were they to be enforced against the District. Consequently, such sections are unenforceable against the District.

■ Finally, the District argues that Code sections 10–22 through 10–27 are void because they contravene TEX.REV.CIV. STAT.ANN., article 6698. These sections

regulate the use of certain motor vehicles in the jurisdiction of the City. They are not in conflict with article 6698 because it only provides state registration and identification requirements for motor vehicles. The statute does not abrogate the City's right to regulate the operation of vehicles within its jurisdiction. *Utter v. State,* 571 S.W.2d 934 (Tex.Crim.App., 1978, no pet.).

The judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion and our prior substituted opinion. Otherwise, the motions for rehearing are overruled.