July 23, 2008

The Honorable Geoffrey I. Barr
Comal County Criminal District Attorney
150 North Seguin Avenue, Suite 307
New Braunfels, Texas 78130

Opinion No. GA-0648

Re: Whether a municipality may adopt particular subdivision ordinances applicable to its extraterritorial jurisdiction and whether a county may do so in its unincorporated areas (RQ-0664-GA)

Dear Mr. Barr:

You ask for an opinion on "(1) whether a municipality may regulate density/zone through platting within its extraterritorial jurisdiction . . . and (2) whether a County may regulate density/zone through platting in the unincorporated areas of a county."[1] You inquire about the validity of certain municipal and county regulations under Local Government Code chapters 212 and 232, which provide respectively for municipal regulation of plats and subdivisions in the extraterritorial jurisdiction[2] (the "ETJ") and county regulation of plats and subdivisions in the unincorporated area of the county. *See* Request Letter, *supra* note 1, at 2, 3–6.

## I.     Legal and Factual Background

Your questions arise from a disagreement between Comal County and the City of Bulverde about the application of particular subdivision and platting regulations in Bulverde's ETJ. A city governing body may adopt rules governing plats and subdivisions of land within its jurisdiction "to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality." TEX. LOC. GOV'T CODE ANN. § 212.002 (Vernon 2008). A city may also extend the plat and subdivision regulations adopted under section 212.002 to its ETJ with certain exceptions. *See id.* §§ 212.002 (municipality may adopt rules governing plats and subdivisions of land within its jurisdiction), 212.003 (rules adopted under section 212.002 may be extended to ETJ subject to exceptions). When the owner of a tract of land located in a city

---

[1]Letter from Honorable Geoffrey I. Barr, Comal County Criminal District Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Jan. 10, 2008) (on file with the Opinion Committee, *also available at* www.texasattorneygeneral.gov) [hereinafter Request Letter].

[2]A municipality's extraterritorial jurisdiction is the unincorporated area contiguous to the municipality's boundaries and located a specific distance from the boundaries, the distance based on the municipality's population. *See* TEX. LOC. GOV'T CODE ANN. § 42.021(a) (Vernon 2008).

subdivides the land, he must have a plat prepared according to municipal laws and regulations and recorded with the county clerk after approval by the appropriate municipal authority. *See id.* §§ 212.002 (municipal governing body), 212.004 (plat preparation and recording), 212.005–.006 (approval by municipal planning commission or by governing body of the municipality). If a city has extended its regulations to the ETJ, these requirements apply to land in the ETJ. *See id.* § 212.003.

A similar procedure applies to subdividing land in the unincorporated area of a county, which includes the unincorporated area within a municipality's ETJ. *See id.* §§ 232.001–.003 (Vernon 2005); *see also id.* § 42.021(a) (Vernon 2008). Chapter 232, subchapter E provides for infrastructure planning in counties.[3] *See id.* §§ 232.101–.109 (Vernon 2005 & Supp. 2007). Section 232.101(a) provides that "the commissioners court may adopt rules governing plats and subdivisions of land within the unincorporated area of the county to promote the health, safety, morals, or general welfare of the county and the safe, orderly, and healthful development of the unincorporated area of the county." *Id.* § 232.101 (Vernon Supp. 2007). A landowner who subdivides land must have a plat prepared according to requirements applicable in the county and recorded after approval by the commissioners court. *See id.* §§ 232.001 (Vernon 2005) (plat preparation and recording), 232.002 (approval by commissioners court), 232.003 (subdivision requirements). Thus, a municipality and the county in which the municipality is located have concurrent jurisdiction over plats and subdivisions of land within the municipality's ETJ. *See La Cour Du Roi, Inc. v. Montgomery County*, 698 S.W.2d 178, 186 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.); Tex. Att'y Gen. Op. No. GA-0366 (2005) at 1.

Chapter 242 of the Local Government Code deals with inconsistent municipal and county requirements in the ETJ by requiring the municipality and the county to enter into an agreement allocating authority to regulate subdivision plats and approve related permits in the ETJ. *See* TEX. LOC. GOV'T CODE ANN. § 242.001(c) (Vernon 2005). Section 242.001(d) provides four ways of allocating authority between the city and county. *See id.* § 242.001(d). Pursuant to Local Government Code section 242.001, Comal County and the City of Bulverde entered into an interlocal cooperation agreement on April 4, 2002 to establish consistent subdivision and plat regulations in the city's ETJ. *See* Request Letter, *supra* note 1, at 1 (Exhibit A, Interlocal Cooperation Agreement between Comal County and City of Bulverde for Subdivision Regulation within the Extraterritorial Jurisdiction of the City of Bulverde) (the "Agreement"); *see also* TEX. LOC. GOV'T CODE ANN. § 242.001 (Vernon 2005). While you state that the Agreement was written to expire on December 31, 2007, its provisions establish the context for your questions. *See* Request Letter, *supra* note 1, at 1–2, 14 & note i.

The Agreement was based on section 242.001(d)(4), which authorizes the municipality and the county to enter into an interlocal agreement that establishes one office to "accept plat applications for tracts of land located in the [ETJ];" to "collect municipal and county plat application fees in a

---

[3] As adopted in 2001, chapter 232, subchapter E applied only to certain urban counties, as defined by the statute. *See* Act of May 17, 2001, 77th Leg., R.S., ch. 736, § 1, 2001 Tex. Gen. Laws 1459, 1459–60. A 2007 amendment removed this limitation. *See* Act of May 15, 2007, 80th Leg., R.S., ch. 1390, § 4, 2007 Tex. Gen. Laws 4779, 4780.

lump-sum amount;" and to "provide applicants one response indicating approval or denial of the plat application." TEX. LOC. GOV'T CODE ANN. § 242.001(d)(4)(A) (Vernon 2005). An agreement under this provision must also establish "a single set of consolidated and consistent regulations related to plats, subdivision construction plans, and subdivisions of land as authorized by Chapter 212 [applicable to municipalities], Sections 232.001–232.005, Subchapters B and C, Chapter 232 [applicable to counties], and other statutes applicable to municipalities and counties that will be enforced in the extraterritorial jurisdiction." *Id.* § 242.001(d)(4)(B). You state that the Agreement provided that Bulverde would enforce its subdivision regulations and certain Comal County regulations in the Bulverde ETJ. *See* Request Letter, *supra* note 1, at 1–2.

As we have explained, chapter 212 of the Local Government Code provides for municipal regulation of subdivisions, including subdivisions in the municipality's ETJ, while chapter 232 provides for county regulation of subdivisions in the unincorporated areas of a county. *See* TEX. LOC. GOV'T CODE ANN. chs. 212 (Vernon 2008), 232 (Vernon 2005 & Supp. 2007). A municipality's authority to regulate subdivisions in its ETJ is set out in section 212.003, which provides in part:

> (a)  The governing body of a municipality by ordinance may extend to the extraterritorial jurisdiction of the municipality the application of municipal ordinances adopted under Section 212.002 and other municipal ordinances relating to access to public roads or the pumping, extraction, and use of groundwater by persons other than retail public utilities, as defined by Section 13.002, Water Code,[4] for the purpose of preventing the use or contact with groundwater that presents an actual or potential threat to human health. However, unless otherwise authorized by state law, in its extraterritorial jurisdiction a municipality shall not regulate:
>
> (1) the use of any building or property for business, industrial, residential, or other purposes;
>
> (2) the bulk, height, or number of buildings constructed on a particular tract of land;
>
> (3) the size of a building that can be constructed on a particular tract of land, including without limitation any restriction on the ratio of building floor space to the land square footage;

---

[4]This provision defines "[r]etail public utility" as "any person, corporation, public utility, water supply or sewer service corporation, municipality, political subdivision or agency operating, maintaining, or controlling in this state facilities for providing potable water service or sewer service, or both, for compensation." TEX. WATER CODE ANN. § 13.002(19) (Vernon 2008).

> (4) the number of residential units that can be built per acre of land.

*Id.* § 212.003(a)(1)–(4) (Vernon 2008) (footnote added). "Unless otherwise authorized by state law," a commissioners court is subject to the same four restrictions on its regulatory power that section 212.003(a)(1)–(4) applies to a city. *See id.* § 232.101(b) (Vernon Supp. 2007).[5] Thus, chapters 212 and 232 impose on a city and a county the same four limits on plat and subdivision regulations.

## II.     City of Bulverde Ordinance Provisions

Your first question, whether a municipality may regulate density or zone through platting within its ETJ, is directed at specific provisions of the Bulverde subdivision ordinance. *See* Request Letter, *supra* note 1, at 1. You suggest that specified provisions of the ordinance are invalid when applied in the ETJ under section 212.003 because you believe they regulate "the bulk, height, or number of buildings constructed on a particular tract of land" and "the number of residential units that can be built per acre of land." *See id.* at 9–10. You single out the following provisions of the ordinance:

### Section 2.03   General Design

#### (a)   Development Density

The density of a development shall be classified by the number of equivalent dwelling units (EDU) provided for in the development. . . . An EDU shall be approximately equivalent to the demand for services of a single family residence. . . . Density shall be classified into three categories as follows:

1) Low density: Less than 0.17 EDU's per acre.

2) Medium Density: 0.17 or more EDU's per acre but not more than 0.4 EDU's per acre.

3) High Density: more than 0.4 EDU's per acre.

#### (b)   Blocks . . . .

#### (c)   Lots

---

[5]These limits were in place when the City of Bulverde and Comal County entered into the Agreement in 2002. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 822, § 6, 1989 Tex. Gen. Laws 3770, 3775 (amending Local Government Code section 212.003); Act of May 10, 2001, 77th Leg., R.S., ch. 736, 2001 Tex. Gen. Laws 1459 (adding Local Government Code section 232.101).

(i) Lots shall have a minimum size based on the density category of the subdivision as follows:

1)  Low Density:  5.01 acres.

2)  Medium Density:  2.01 acres

3)  High Density:  20,000 square feet for single-family residential lots with a density of no more than one residence per 30,000 square feet of the entire tract being subdivided, excluding the 100-year floodplain, commercial property and school property.  Lots other than single-family residential shall be a minimum of 30,000 square feet.

*See id.* at 9 (Exhibit B, quoting BULVERDE, TEX., ORDINANCE NO. 74-02-02-12, § 2.03 (2002) at 22–23) [hereinafter Bulverde Ordinance].  *See also* Bulverde Ordinance § 1.03, at 2 (defining "equivalent dwelling unit" (EDU) as "[a] measure of utility services").

The Bulverde Ordinance provisions repeatedly refer to density and also establish residential lot size limits.  *See* Bulverde Ordinance § 2.03 (2002) at 22–23.  Thus, the ordinance provisions appear on their face to be inconsistent with Local Government Code section 212.003(a)(1)–(4).  However, a brief submitted by the Bulverde City Attorney states that "the lot size regulations in the ordinance that are applicable in the city limits and ETJ were adopted by the City as a result of water quantity issues and concerns."[6] *See* Bulverde Ordinance §§ 1.01(a)(i), at 1 (among other purposes, regulations are adopted to maintain water availability and quantity), 4.03, at 63 (protection of water quality; application of Texas Commission on Environmental Quality Edwards Aquifer Rules, 30 TEX. ADMIN. CODE § 213, to certain subdivisions).

The City of Bulverde relies on the Texas Supreme Court decision in *Quick v. City of Austin* to uphold the ordinance you question.  *See* Bulverde Brief, *supra* note 6, at 4–5 (referring to *Quick v. City of Austin*, 7 S.W.3d 109 (Tex. 1998)).  *Quick* involved a challenge to a City of Austin water pollution control ordinance that provided water quality control in Barton Creek.  *See Quick*, 7 S.W.3d at 113.  The ordinance, known as the Save our Springs Ordinance ("SOS Ordinance"), was approved by voters in a referendum and adopted by the city council pursuant to its power as a home-rule city.  *See id.* at 112, 122.

Persons contesting the SOS Ordinance argued that it was invalid on various grounds, including the ground that it was adopted without the public hearing required by Local Government Code section 212.002.  *See id.* at 120.  They also argued that the ordinance violated Local

---

[6]Brief from Frank J. Garza, Bulverde City Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Feb. 22, 2008), citing Bulverde Ordinance § 2.03(c) (2002) at 22–23 (on file with the Opinion Committee) [hereinafter Bulverde Brief].

Government Code section 212.003 because its restrictions on impervious[7] cover effectively regulated the use, bulk, height, number, or size of buildings in the city's ETJ. *See id.* at 120–21. The City of Austin argued that section 212.003 did not apply to the SOS Ordinance, which was a water pollution control measure, and the court agreed with the city. *See id.* The court observed that the stated goal of the SOS Ordinance was to protect and preserve a "clean and safe drinking water supply," and "to prevent further degradation of the water quality in Barton Creek" and certain springs. *Id.* at 121. The impervious cover limitations had effects on land use, but they were "typical features in ordinances protecting water quality." *Id.* The court stated that "[b]y their express terms, sections 212.002 and 212.003 apply to ordinances that 'govern plats and subdivisions of land.'" *Id.* Moreover, legislative history revealed "that section 212.003 was not intended 'to affect the ability of a municipality to apply water control requirements' in its extraterritorial jurisdiction." *Id.* (citing CONFERENCE COMMITTEE REPORT, Tex. H.B. 3187, 71st Leg., R.S. (1989)). Thus, "sections 212.002 and 212.003 apply only to zoning statutes, not water control measures such as the Ordinance." *Id.* Although the SOS Ordinance affected land use through its imposition of impervious cover restrictions, those restrictions were a recognized method of preserving water quality. *See id. Quick* determined that "the Ordinance is not a zoning regulation seeking to shape urban development, but rather is a measure designed to protect water quality." *Id.* The court held "that the requirements of sections 212.002 and 212.003 are not applicable to the Ordinance, and the Ordinance cannot be invalidated by these statutes." *Id.*

There are significant differences between the circumstances addressed in *Quick v. City of Austin* and those at issue in the conflict between Comal County and the City of Bulverde. A home-rule city like the City of Austin derives its power from article XI, section 5 of the Texas Constitution and is not dependent on the Legislature for a grant of authority. *See id.* at 122 (citing *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975)). Bulverde is a type A general-law city governed by chapter 22 of the Local Government Code.[8] A general-law municipality is a political subdivision "created by the State and, as such, possess[es] those powers and privileges that the State expressly confers upon [it]." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004). The City of Bulverde is subject to Local Government Code section 212.003, which prohibits a city from regulating certain aspects of development in its ETJ, such as "the bulk, height, or number of buildings constructed on a particular tract of land" and "the number of residential units that can be built per acre of land." Moreover, unlike the ordinance at issue in *Quick*, the Bulverde Ordinance regulates density but is claimed to be a water quantity ordinance. The ordinance in *Quick* facially regulated water, while opponents claimed that it actually regulated the number, use, and size of buildings in the city's ETJ. *See Quick*, 7 S.W.3d at 112.

This office generally does not construe city charters or ordinances, although when the meaning of a charter or ordinance provision is clear, we will determine whether it is consistent with state or federal law. *See* Tex. Att'y Gen. Op. No. GA-0217 (2004) at 4–5. *See generally* Tex. Att'y Gen. Op. No. GA-0433 (2006) at 1. The question before us is whether certain provisions of the

---

[7]Non-porous.

[8]*See* http://www.tml.org/source/Members/TML_Directory_Profile.cfm?ID=460 (last visited July 14, 2008).

Bulverde Ordinance are consistent with Local Government Code section 212.003, but we cannot answer this question without interpreting the ordinance provisions, and this would require us to address and resolve fact questions, such as whether the ordinance provisions actually impact water supply rather than building density. *See generally Lloyd Fry Roofing Co. v. State*, 541 S.W.2d 639, 642–43 (Tex. Civ. App.—Dallas 1976, writ ref'd n.r.e.) (if the statute does not define a technical term, courts have interpreted the statute in the light of the testimony of expert witnesses familiar with the particular art, science, or trade). This office cannot investigate and resolve disputed questions of fact or mixed questions of law and fact in an attorney general opinion. *See* Tex. Att'y Gen. Op. Nos. GA-0459 (2006) at 3–4, O-3382 (1941) at 5. Although the Bulverde Ordinance provisions appear on their face to be inconsistent with Local Government Code section 212.003, we cannot make that determination as a matter of law. *See generally City of Lucas v. N. Tex. Mun. Water Dist.*, 724 S.W.2d 811, 820 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) ("Ruling upon an ordinance does not involve an abstract issue of law but an issue of law predicated upon the facts of the individual case.").

## III.    Kendall County Regulations

You also ask whether a county may regulate density or zone through platting in the unincorporated areas of the county, with a particular focus on the Kendall County Development Rules and Regulations. *See* Request Letter, *supra* note 1, at 1, 11. The Kendall County rules state that they are not intended and should not be interpreted to regulate "the bulk, height, or number of buildings constructed on a particular tract of land" or any of the other matters that section 232.101(b) of the Local Government Code prohibits a county from regulating. *See id.* at 11 (citing Exhibit D, KENDALL COUNTY, TEX., DEVELOPMENT RULES AND REGULATIONS ¶ 103.1000(11) NOTE (Sept. 25, 2006) at 7). A table in the rules summarizes "[m]aximum density and corresponding lot sizes and road frontage depending on the source/type of water and sewage disposal system." KENDALL COUNTY, TEX., DEVELOPMENT RULES AND REGULATIONS ¶ 301.1700 (Sept. 25, 2006) at 34). With respect to this tabular summary you state that "[g]enerally speaking, the allowable density per subdivision is determined first by the source of the water and sewage disposal system. Next, each category has its own divisor . . . that determines the allowable number of lots in the subdivision." Request Letter, *supra* note 1, at 11 (citing Exhibit D KENDALL COUNTY, TEX., DEVELOPMENT RULES AND REGULATIONS ¶ 301.1700 (Sept. 25, 2006) at 34). You ask whether such a development regulation would be valid under Local Government Code section 232.101 and the Texas Supreme Court's reasoning in *Quick*. *See id.* at 12.

Your question about the validity of Kendall County's development regulations cannot be answered as a matter of law. We note that the regulation refers to "density," but we cannot determine from its language whether it is among the regulations that section 232.101 prohibits "[u]nless otherwise authorized by state law." *See* TEX. LOC. GOV'T CODE ANN. § 232.101 (Vernon Supp. 2007). This inquiry also raises fact questions, such as the actual impact of the regulation on water supply. Accordingly, this question cannot be answered in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0459 (2006) at 3–4.

Assuming without deciding that Kendall County's minimum lot size requirements are valid, you ask whether Comal County could adopt such a regulation and apply it to the ETJ of Bulverde

by virtue of an interlocal agreement under section 242.001(d). *See* Request Letter, *supra* note 1, at 12. You inform us that the Cow Creek Groundwater Conservation District (CCGCD), created in 1999 with boundaries coextensive with the boundaries of Kendall County,[9] is responsible for regulating groundwater production in Kendall County. *See id.* at 11. The CCGCD "has all of the rights, powers, privileges, authority, functions, and duties provided by the general law of the state, including Chapter 36, Water Code, applicable to groundwater conservation districts created under Section 59, Article XVI, Texas Constitution." Act of May 27, 2001, 77th Leg., R.S., ch. 966, § 3.0104, 2001 Tex. Gen. Laws 1991, 2023 (uncodified). The Kendall County rules state that they are consistent with the CCGCD rules. KENDALL COUNTY, TEX., DEVELOPMENT RULES AND REGULATIONS ¶ 103.1000(3) (Sept. 25, 2006) at 5–6; *see* Request Letter, *supra* note 1.

The information provided about the Kendall County regulations suggests that they must be consistent with the CCGCD rules. Comal County is not, however, subject to the CCGCD rules and its commissioners court cannot rely on those rules to justify minimum lot sizes within its boundaries. Regardless of whether Kendall County's minimum lot size requirements are valid within its boundaries, the Comal County Commissioners Court may not adopt such regulations unless Local Government Code chapter 232 authorizes it to do so.

## IV.     *Integrity Group, Inc. v. Medina County Commissioners Court*

In connection with the validity of plat and subdivision regulations in the unincorporated areas of the county, you ask whether *Integrity Group, Inc. v. Medina County Commissioners Court* stands for the proposition that a county may not regulate lot size. *See Integrity Group, Inc. v. Medina County Comm'rs Court*, No. 04-03-00413-CV, 2004 WL 2346620 (Tex. App.—San Antonio Oct. 20, 2004, pet. denied) (mem. op.). In *Medina County*, part of a developer's tract was located over the Edwards Aquifer Recharge Zone. *See id.* at *1. In 1995, Medina County rejected the developer's plat for non-compliance with a rule requiring a minimum lot size of one acre for subdivisions that would use onsite sewage facilities in the Edwards Aquifer Recharge Zone. *See id.* The court held that Medina County's powers were limited to those allowed by the platting statute found in chapter 232 of the Local Government Code, and it therefore could not reject the plat because of lot size. *See id.* at *2. However, the *Medina* court did not address chapter 232, subchapter E of the Local Government Code, which broadened county authority to regulate subdivisions and plats. Subchapter E was adopted in 2001 and is applicable only to plat applications filed after its effective date. *See* Act of May 17, 2001, 77th Leg., R.S., ch. 736, § 3(b), 2001 Tex. Gen. Laws 1459, 1461 (adopting TEX. LOC. GOV'T CODE ANN. chapter 232, subchapter E). Subchapter E includes section 232.101, which provides that a county may not regulate "the number of residential units that can be built per acre of land," unless "*otherwise authorized by state law.*" TEX. LOC. GOV'T CODE ANN. § 232.101(a) (Vernon Supp. 2007) (emphasis added). It also provides

---

[9]*See* Act of May 28, 1999, 76th Leg., R.S., ch. 1331, 1999 Tex. Gen. Laws 4536 (creating CCGCD); Act of May 27, 2001, 77th Leg., R.S., ch. 966, art. 3, pt. 1, 2001 Tex. Gen. Laws 1991, 2023–25 (ratifying CCGCD, subject to election); Act of May, 25, 2001, 77th Leg., R.S., ch. 1349, 2001 Tex. Gen. Laws 3337 (ratifying CCGCD, subject to election); Act of May 20, 2005, 79th Leg., R.S., ch. 1349, 2005 Tex. Gen. Laws 4214 (granting CCGCD additional authority).

that "[t]he authorities under this subchapter are cumulative of and in addition to the authorities granted under this chapter and all other laws to counties to regulate the subdivision of land." *Id.* § 232.107 (Vernon 2005). The *Medina* court's statement that a county's powers were limited to those allowed by the platting statute found in Local Government Code chapter 232 appear to be inconsistent with the provisions of subchapter E. In our opinion, a court would hold that *Medina County* no longer correctly states the law on a county's authority to regulate lot size.

## S U M M A R Y

Chapter 212 of the Local Government Code authorizes municipalities to regulate subdivisions and plats within their boundaries and their extraterritorial jurisdiction.   Chapter 232 authorizes counties to regulate subdivisions and plats within the unincorporated area of the county.  Unless otherwise authorized by state law, counties and cities may not adopt subdivision or plat regulations applicable to a city's extraterritorial jurisdiction that regulate (1) the use of any building or property for business, industrial, residential, or other purposes; (2) the bulk, height, or number of buildings constructed on a particular tract of land; (3) the size of a building that can be constructed on a particular tract of land, including without limitation any restriction on the ratio of building floor space to the land square footage; or (4) the number of residential units that can be built per acre of land.

Certain city regulations and county regulations addressed in this opinion appear to be facially inconsistent with the Local Government Code restrictions on lot size and residential unit density, but some of these regulations are claimed to actually protect water supply.   However, because interpreting regulations requires the investigation and resolution of fact questions, their validity under Local Government Code chapters 212 and 232 cannot be determined as a matter of law in an attorney general opinion.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Susan L. Garrison
Assistant Attorney General, Opinion Committee