COWBOY COUNTRY
ESTATES, Appellant,

v.

ELLIS COUNTY, Texas, et
al., Appellees.

No. 10–84–165–CV.

Court of Appeals of Texas,
Waco.

March 21, 1985.

Leo C. Michaud, Leo C. Michaud & Associates, P.C., Seagoville, for appellant.

Mary Lou Shipley, Asst. County Atty., Waxahachie, Linda B. Secord, Asst. Atty. Gen., Austin, for appellees.

## OPINION

JAMES, Justice.

This is an appeal from a permanent injunction. Plaintiff-Appellees Ellis County and the Texas Department of Water Resources brought this suit against Cowboy Country Estates, a partnership, Gunby Aero, Inc., and W.B. Cotton Enterprises, Inc., doing business as Cowboy Country Estates, a partnership, Harold E. Gunby, and William B. Cotton. Defendant Cowboy Country Estates has appealed.

Cowboy Country Estates is the owner of a tract of 100.745 acres of land in Ellis County. Plaintiffs' action alleged that Defendants have violated three separate ordinances passed by Ellis County, to wit, Ellis County Subdivision Rules and Regulations, Ellis County Rules for Private Sewage Facilities, and the Ellis County Flood Plain Ordinance, and sought relief by way of injunction against Defendants for enforcement of said ordinances.

Cowboy Country Estates initially sought to develop its land for the sale of lots with and without homes thereon, and pursuant thereto filed a subdivision plat of its proposed development with the Commissioners Court of Ellis County. Approval of this plat was denied by said Commissioners Court on May 9, 1983, and thereafter no further action was taken by Defendants on this original plat.

By letter dated June 8, 1983, Cowboy Country Estates advised Ellis County of its intention to build a mobile home park and requested advice on rules and regulations applicable to such development. Ellis County did not respond in writing to this letter. The Public Works Supervisor for the county advised Cowboy Country Estates that the County's Rules and Regulations did not apply to a mobile home park developed for lease only (as opposed to sale of lots). Defendant Cowboy Country Estates repeatedly asked the County Public Works Administrator what rules and regulations applied to its mobile home park and what licenses or permits if any were required.

Cowboy Country Estates started installation of three septic tank units in July 1983, which units were installed in accordance with plans and specifications approved by the Texas Department of Health on November 30, 1983. Two of the completed septic tank units were designed to service four mobile homes each, while one of such units was designed to service two mobile homes. Units of the sewage treatment system have been in operation from October 1983 until May 1984, when temporary restraining orders were served on Cowboy Country Estates.

Subdivision Rules and Regulations of Ellis County were adopted September 2, 1983, whereas Cowboy Country Estates had begun development of a mobile home park prior to the effective date of such county ordinance. The County issued five permits for mobile homes to Cowboy Country Estates on or about September 29, 1983, and after said last-mentioned date Cowboy Country Estates had leased spaces for some three mobile homes for occupancy by tenants. At the time of the hearing in the trial court one mobile home was occupied by a tenant (although no rent was being paid) and one was being used as a construction and leasing office.

Cowboy Country Estates obtained approval from the State Department of Health for its sewage disposal system, at a time when no approval by either the State or Ellis County was required. The proposed sewage facility consisted of thirty-four separate septic tank units or systems to serve one hundred fifty mobile homes.

At the time of trial, the plans of Cowboy Country Estates called for lots on spaces of 16,000 square feet each, together with roads and common areas.

The only plat submitted by Cowboy Country Estates which called for a subdivision for sale of lots was denied approval by the Commissioners Court of Ellis County. The first time Ellis County indicated that Cowboy Country Estates was not in compliance with applicable rules and regulations was by letter dated April 30, 1984 from the Assistant County Attorney to Cowboy Country Estates. Thereafter, and at the time of trial, the proposed mobile home lots were for lease only and not for sale by Defendant Cowboy Country Estates.

The judgment appealed from is dated July 27, 1984, wherein the trial court permanently enjoined Defendants from selling, leasing, or encumbering all or any portion of the land in question comprising Cowboy Country Estates, from conveying or alienating all or any part of any note, lease, contract or loan secured in whole or in part by the land in question; from engaging in further development of the tracts in violation of Ellis County Subdivision Rules and Regulations; and from engaging and installing any sewer or other utility facilities in violation of said Subdivision Rules and Regulations. Said judgment further held that Defendants were not in violation of the Ellis County Flood Plain Ordinance, nor were Defendants in violation of Ellis County Rules for Private Sewage Facilities, but that they were in violation of Ellis County Subdivision Rules and Regulations.

In said judgment the trial court further found that the Ellis County Subdivision Rules and Regulations applied to residential subdivided property used for leasehold purposes the same as it applied to property owned by a freeholder. In this connection, said judgment recited that the same problems of health, drainage, sanitation, disease, and pestilence are present and necessary for regulation for a person holding subdivided property under a lease interest as a holder under a deed, or any other interest in any subdivided property.

The trial court further found that the roads being built on the land in question do not meet specifications of Ellis County Subdivision Rules in that they are of insufficient width (same being a 24 foot base with a 20 foot asphalt width), that the drainage easements likewise are of insufficient width, and that the rock base for roads do not meet specifications because of insufficient depth. The trial court further found that the development of Cowboy Country Estates as a mobile home park constitutes development of a "subdivision" within the purview of Article 6626a, Tex.Rev.Civ. Statutes, and the Ellis County Subdivision Rules and Regulations adopted September 2, 1983; and that Ellis County is not barred by laches or estoppel to enforce compliance with its Subdivision Rules and Regulations.

Prior to September 1, 1983, Article 6626a, Tex.Rev.Civ. Statutes, empowered Commissioners Courts of counties of population of less than 190,000 in effect to promulgate requirements concerning the filing of plats for subdivision, regulating the construction and dimensions of streets and roads in such subdivisions, requiring adequate drainage for such roads or streets, and requiring owners of such subdivided land to give bond for proper construction of such streets and roads.

On September 1, 1983, Article 6626a was repealed; however, the Legislature effective on said last-named date brought forward substantially the provisions of Article 6626a (pertinent to this appeal) into Section 2.402 of Article 6702–1, Tex.Rev.Civ. Statutes.

Defendant-Appellant Cowboy Country Estates came to this court with sixteen points of error. We have carefully considered and overrule all of Appellant's points of error and affirm the trial court's judgment. Likewise the Plaintiff-Appellees assert one cross-point which we overrule.

Appellant's first point asserts the trial court erred in finding that Cowboy Country Estates as a mobile home park constitutes

a "subdivision" within the purview of Article 6626a, Tex.Rev.Civ. Statutes.

Section 1 of Article 6626a, dealing with the term "subdivision", the pertinent provisions of which were substantially carried over into Section 2.402(b) of Article 6202–1, Tex.Rev.Civ. Statutes, effective September 1, 1983, provided:

"Section 1. Hereafter, in all counties having a population of less than one hundred ninety thousand (190,000) according to the last preceding Federal Census, every owner of any tract of land situated without the corporate limits of any city in the State of Texas, who may hereafter divide the same in two (2) or more parts for the purpose of laying out any subdivision of any such tract of land, or any addition without the corporate limits of any town or city, or for laying out suburban lots or building lots, and for the purpose of laying out streets, alleys, or parks, or other portions intended for public use, or the use of purchasers or owners of lots fronting thereon or adjacent thereto, shall cause a plat to be made thereof, which shall accurately describe all of said subdivision or addition by metes and bounds and locate the same with respect to an original corner of the original survey of which it is a part, giving the dimensions thereof of said subdivision or addition and the dimensions of all lots, streets, alleys, parks, or other portions of same, intended to be dedicated to public use or for the use of purchasers or owners of lots fronting thereon or adjacent thereto, provided, however, that no plat of any subdivision of any tract of land or any addition shall be recorded unless the same shall accurately describe all of said subdivision or addition by metes and bounds and locate the same with respect to an original corner of the original survey of which it is a part giving the dimensions thereof of said subdivision or addition, and dimensions of all streets, alleys, squares, parks or other portions of same intended to be dedicated to public use, or for the use of purchasers or owners of lots fronting thereon or adjacent thereto."

Appellant argues that the land in question does not constitute a "subdivision" within the meaning of the statutes concerned because Cowboy Country Estates has no intention of *selling* lots, but only to *lease* spaces for mobile homes; that since the land is not being divided for purpose of sale, that it is not a "subdivision" under these statutes. We do not agree.

There is nothing in Article 6626a or in Section 2.402 of Article 6702–1 that requires that lots be offered for sale in order to constitute a "subdivision." Testimony of Mr. Gunby, one of the Defendants, is to the effect that the 100 acre tract is to be composed of 290 lots or "mobile home spaces", with the space allocated to each mobile home to be 16,000 square feet. Moreover, testimony of Ken McWaters, another witness for Defendant, is to the effect that although the mobile home spaces are for lease, such mobile homes set on the rental project are seldom ever relocated. McWaters further testified: "The owners as a part of their cost of operation and when we lease with a tenant, we have considerable deed restrictions that we apply to them ..... and we have restrictions on ourselves that we will maintain the green belts and *public areas* for their use." (emphasis supplied). It is a fair statement to say that Mr. McWaters testified that the occupant of each mobile home has the responsibility of maintaining his own lot, while Cowboy Country Estates has the responsibility to maintain all "public" areas such as swimming pools, tennis courts, green belts, and the like.

As stated, the statutes concerned do not make any requirement that the lots be for fee simple purchases in order for a tract of land to be constituted as subdivision. The manifest overall purpose of the statutes concerned is to give counties the power to control subdivisions to protect its citizens in matters of public health and sanitation, drainage, and maintenance of public roads. These public problems and concerns are just as great in the case of mobile home parks where the spaces are leased as in the

case where lots are subdivided for purpose of sale. Appellant's first point is overruled.

Appellant's second point is closely akin to the first point, to wit, that the trial court erred in finding that Cowboy Country Estates is subject to the Ellis County Subdivision Rules and Regulations, for the stated reason that Cowboy Country Estates is not a "subdivision" for the reasons hereinabove stated. We do not agree.

Article V, Section 18 of the Texas Constitution in its pertinent parts provides:

"The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this constitution and the laws of this State, or as may be hereafter prescribed." As amended November 2, 1954 and November 8, 1983, effective January 1, 1984.

In the exercise of those duties that the county shall exercise over "all county business", it has been held that a broad and liberal construction should be given to "county business" rather than a restrictive one. See *Glenn v. Dallas County Bois D'Arc Island Levee District*, (Dallas CA 1923) 275 S.W. 137 at page 145; *Rodgers v. County of Taylor*, (Eastland CA 1963) 368 S.W.2d 794, NRE.

In the case at bar, Ellis County has exercised a power over "county business" conferred upon it by Article 6626a originally, and subsequently by Section 2.402 of Article 6702-1. Appellant's second point of error is overruled.

Appellant's fourth point of error is closely akin to its second point, in that in the fourth point Appellant contends that as a matter of law Ellis County had no authority to adopt "subdivision" rules and regulations applicable to residential property used for leasehold purposes. For the same reasons hereinabove set out, we overrule this point of error.

Appellant's third point asserts the trial court erred in ruling that the Ellis County Subdivision Rules and Regulations pertaining to public roads apply to Cowboy Country Estates because (it argues) no road or drive will be dedicated to public use. We do not agree.

As stated before, Cowboy Country Estates submitted a detailed plat to the Ellis County Commissioners Court showing the proposed lots, streets, swimming pools, green belts, office area, utility easements and the like. This plat was denied by the Ellis County Commissioners Court on May 9, 1983. Thereafter, by letter of June 8, 1983, Cowboy Country Estates informed Ellis County of its intention to proceed with construction of a mobile home park. Between June 8, 1983, and the time this suit was filed on May 9, 1984, testimony from one of Appellant's witnesses shows that approximately $650,000.00 to $750,000.00 had been expended by Cowboy Country Estates on this mobile home park. Mr. McWaters testified to the construction of two recreational areas, each of which has a clubhouse, swimming pool, and deck, tennis courts, barbecue areas, and landscaping. Then, with reference to roads and traffic his testimony was as follows:

"Consequently, for more green area, for better speed control, and for ... because we had rather have it in green belt than in hot black asphalt, we reduced the pavement size down from our original twenty-four feet to twenty feet and increased the parking pad to twenty-five feet. The normal parking pad is 20 by 20 or 20 by 18 per two cars, so 25 by 25 is oversized for 3 cars and it allows them to get completely off the paved road. So we don't allow parking on the street.

"The configuration of the plan allows us to put stop signs at the crossings and thereby control traffic."

On cross-examination, McWaters testified:

"Q  Are there going to be gates to Cowboy Country Estates?

"A  An operable gate or a decorative gate?

"Q  An operable gate.

"A No, they're not.

"Q Would there be a guard at the entrance?

"A No, ma'am.

"Q So anyone that wanted to come in and drive around the roads there could do so?

"A There will be notification that those are private drives and just like anybody can turn around in your driveway at home, yes, we cannot prevent that."

■ Whether a property owner had an intent to dedicate is a question of fact. Where the facts are in dispute or the evidence is conflicting, the issue of the existence of a dedication is a question of fact to be determined by the trier of fact from the circumstances of each particular case. 30 Tex.Jur. 3rd, "Dedication," Section 13, p. 81.

■ The elements of dedication are: (1) an intention of the landowner to devote his land to a public use; (2) a manifestation of the landowner's intention through his words or acts, and a communication to the public or some portion thereof, and (3) an acceptance of the use of the property by the public. *King v. Walton*, (San Antonio CA 1978) 576 S.W.2d 460, NRE; also see 30 Tex.Jur. 3rd, "Dedication," Sec. 14, p. 81.

In the case at bar the trial court made implied findings of fact concerning the above three elements of an implied dedication, in favor of Plaintiff-Appellee Ellis County. From the four corners of this record there is ample evidence to support these findings of fact. We therefore overrule Appellant's third point of error and hold that the roads and drives in question were dedicated by Cowboy Country Estates to public use.

Appellant's points eight and nine complain of the trial court's refusal to apply the equitable remedies of estoppel and laches against Ellis County. They argue that Ellis County officials delayed enjoining the development of Cowboy Country Estates as a mobile home park from June 1983, when the County first learned of the plan, until it was nearly complete in May of 1984, some eleven months later.

■ It is well-settled law that the equitable remedies of laches and estoppel do not bind a county when it is acting purely in governmental affairs. See *Lewis Cox & Son, Inc. v. High Plains Underground Water Conservation District No. 1*, (Amarillo CA 1976) 538 S.W.2d 659, NRE, and the cases cited at page 663. Appellant's points eight and nine are overruled.

Appellant has other points and contentions. We have carefully considered same and find them to be without merit. All are overruled.

■ Appellees have one cross-point wherein they urge the trial court erred in holding that Appellant is not in violation of Ellis County's rules for private sewage facilities. We overrule this cross-point. Suffice it to say that the evidence in the record is legally and factually sufficient to support this finding made by the trial court. Evidence shows that the design for private sewage facilities in question was approved by the Texas Department of Health; that elements of the overall system were installed and in operation before Plaintiff-Appellees brought this suit.

Judgment of the trial court is in all things affirmed.

AFFIRMED.