**CITY OF WESLACO, Appellant,**

v.

**Virgil CARPENTER, Appellee.**

**No. 13–84–180–CV.**

Court of Appeals of Texas, Corpus Christi.

May 23, 1985.

Rehearing Denied June 18, 1985.

Ramon Vela, Robert L. Galligan, Weslaco, for appellant.

Hollis Rankin, McAllen, for appellee.

Before QUENTIN KEITH,[1] UTTER and KENNEDY, JJ.

## OPINION

QUENTIN KEITH, Justice (Retired).

Appellant is a home rule municipal corporation which sought to permanently enjoin appellee from constructing a mobile home and/or recreational vehicle park within appellant's extraterritorial jurisdiction until appellee complied with city code standards for subdivision developments. The action was heard by the trial court alone, which entered judgment denying appellant's application for permanent injunction.

The parties stipulated the following facts: An 8.17 acre park is being developed by appellee for the rental of mobile homes and/or recreational vehicles. The land has not yet been divided; by division, appellee has not sold any portion of the land, and none of the rental lots are currently being offered for sale. The site plan for appellee's park provides for 128 rental lot spaces, which are numbered in sequence. Each space has separate electrical source outlets. There are fourteen electrical meters. The marking of the numbers in sequence is for appellee's convenience in billing the customers and distinguishing the rental spaces. In addition, appellee has constructed blacktopped caliche streets and a drainage inlet leading to a canal, has drilled a well for potable water, has established several septic tanks, and has sought to install electrical power lines and outlets through various portions of the property. It would cost appellant in excess of $150,-000 to ensure that the park conformed to appellant's standards if the property were to be annexed.

TEX.REV.CIV.STAT.ANN. art. 970a § 4 (Vernon 1963) provides that the "governing body of any city may extend by ordinance to all of the area under its extraterritorial jurisdiction the application of such city's ordinance establishing rules and regulations governing plats and the subdivision of land...." Although Art. 970a does not explain what a "subdivision" is, appellant sought to define the term by local Ordinance 75–4 as follows:

*Subdivision:* A division of any tract of land situated within the corporate limits of the City, or within the extraterritorial jurisdiction of such limits, into two or more parts for the purpose of developing any tract of land ... or for laying out suburban lots or building lots, or any lots, and streets, alleys or parts or other portions intended for public use or the use of purchasers or owners of lots fronting thereon or adjacent thereto.

This definition was amended by Ordinance 79–26, which added the following language:

"Subdivision" ... shall also include the development, within the corporate limits of the City or within its extraterritorial jurisdiction of a mobile home or recreational vehicle park, *except* that the provisions of Ordinance No. 74–32 shall apply in connection with the establishment, design, and operation of such parks."

Appellee contends that his acreage is a "rental park" and not a "subdivision" and that all the statutes and ordinances cited by appellant, with the sole exception of Ordinance 74–32, control only "subdivisions." Ordinance 74–32 provides minimum standards for mobile home and/or recreational vehicle parks by, inter alia, establishing requirements for design, construction, and maintenance of the parks and related utilities and facilities. Ordinance 74–32 also provides for issuance of permits, licensing of operators, and authorization of inspections for the mobile home and/or recreational vehicle park. Appellee argues, however, that the language of Ordinance 74–32 has application only within appellant's city limits, and is thus inapplicable to development in the extraterritorial jurisdiction. Appellee therefore concludes "that a 'one lot' subdivision in the city's

---

**1.** Associate Justice, Court of Appeals, Ninth Supreme Judicial District (Ret.), sitting by designation. *See,* Art. 1812, as amended.

extraterritorial jurisdiction is not subject to anyone's control." We disagree.

In arguing that the only issue before us is whether his conduct has created a "subdivision", appellee argues that the "ordinary understanding" of the term "subdivision" must be construed as requiring the land to be split into at least two different lots which are *owned* by different people. He states that the purpose of his development is merely to *rent* spaces rather than to *sell* lots, and contends that transfer of *ownership* is needed before a "one-lot project" can be "subdivided." Thus, a mere splitting of title by lease or rent is insufficient to create a "subdivision". We find appellee's reasoning overly narrow.

The normal, common-sense meaning of the term "subdivision" is expressed in Black's Law Dictionary (5th ed. 1979) as "[d]ivision into smaller parts of the same thing or subject-matter. The division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land for sale *or development.*" [emphasis added].

A similar interpretation was expressed in the case of *City of Corpus Christi v. Unitarian Church*, 436 S.W.2d 923 (Tex.Civ. App.—Corpus Christi 1968, writ ref'd n.r. e.), in which this court considered the following language of TEX.REV.CIV.STAT. ANN. art. 974a, § 1 (Vernon 1963):

"Hereafter, every owner of any tract of land situated within the corporate limits ... who may hereafter *divide* the same in two or more parts *for the purpose of laying out any subdivision* of any tract of land or any addition to any ... city, or for laying out suburban lots or building lots, ... shall cause a plat to be made thereof.... (emphasis supplied)."

We then stated that:

The language of Section 1 of Art. 974 is plural and relates to a division of property into parts. The same is true of the City Charter and the applicable provisions of its ordinances. It contemplates subdivision for subdivision development purposes....

We believe that the applicability of the language in Art. 974a is controlled by the word "divide." The statute states that "every owner of any tract of land ... who may hereafter *divide* the same in two or more parts ..." controls the disposition of those who are affected thereby.

 We decline to hold that the legislature intended a "subdivision" to be specifically a partition of property into separate lots accompanied by a permanent transfer of ownership to the occupant of each separate lot. Rather, a "subdivision" of property may refer simply to the act of partition itself, regardless of whether an actual transfer of ownership—or even an intended transfer of ownership—occurs. See, e.g., *Lacy v. Hoff*, 633 S.W.2d 605 (Tex.App.—Houston 1982, writ ref'd n.r.e.) (a zoning case). Consequently, since the evidence reflects that appellee purposely divided his acreage into 128 rental spaces, we find that he effected a "subdivision" of his property. Thus, pursuant to Section 4 of Article 970a, appellant has properly extended by City Ordinances the application of its rules and regulations governing plats and the subdivision of land to the area under its extraterritorial jurisdiction.

The point of the statutes and ordinances cited is that a subdivision of land, whether it refers to merely partitioning property or instead refers to sales of residential sites involving separate owners, suggests *development*. The trial evidence reflects that the development will potentially be substantial (128 rental spaces). Section 3 of Article 970a established extraterritorial jurisdiction "[i]n order to promote and protect the general health, safety and welfare of persons residing within and adjacent to the cities of the state....", and the stated purpose of appellant's Ordinance 75–4, controlling platting and subdividing of relevant land, "is to provide for the orderly, safe, and healthful development of the area within the City and within the area surrounding the City and to promote the health, safety, morals, and general welfare of the community."

**604**

The injunction sought by appellant arises not only from proper interpretation of pertinent statutes and ordinances but also as a valid exercise of appellant's police power, which by its very nature involves the regulation of subdivision development "to prevent the use thereof in a manner that is detrimental to the public interest. The police power may be loosely described as the power of the sovereign to prevent persons under its jurisdiction from conducting themselves or using their property to the detriment of the general welfare." *Dupuy v. City of Waco*, 396 S.W.2d 103, n. 3 (Tex.1965); *City of Corpus Christi v. Unitarian Church*, 436 S.W.2d at 930. Appellee seeks to provide 128 rental spaces on an 8.17 acre lot. The concomitant need for city services, in addition to the predictable problems generated by such intensive population of the land, justify appellant's use of its police power in protecting the general welfare. *See City of Round Rock v. Smith*, 687 S.W.2d 300 (Tex.1985).

Appellee's counsel has made a lengthy argument with his major premise being based upon a single-sentence caveat found in *22 Texas Practice, "Municipal Law & Practice", § 473, p. 216* (Text, 1976). From our intensive review of the question, we do not share in the author's views as set out in his caveat. Indeed, the next sentence in the section points to the grave dangers to the public health posed by the use of septic tanks along with drinking water from wells in the vicinity.

Appellee would deny appellant the lawful right to protect the public health from such dangers because appellee says he has decided to rent the 128 lots rather than selling such lots under deeds.

Having given careful consideration to the argument and all of the authorities called to our attention, we find that the City of Weslaco discharged its burden of showing that it was entitled to the issuance of the permanent injunction and that the trial court erred in denying such relief.

We sustain appellant's first, second, third and fifth points of error. The judgment of the trial court is reversed and the cause is remanded with instructions to issue the injunction as sought by the City of Weslaco to remain in effect until appellee has complied with all of the applicable statutes and ordinances regulating the platting of subdivisions. It is so ordered.

REVERSED and REMANDED with instructions.