ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 30, 2004

The Honorable Michael S. Wenk
Hays County Criminal District Attorney
Hays County Justice Center
110 East Martin Luther King
San Marcos, Texas 78666

Opinion No. GA-0223

Re: Whether a condominium development is a subdivision subject to county regulation under Local Government Code chapter 232 (RQ-0177-GA)

Dear Mr. Wenk:

You ask whether a condominium development is a subdivision subject to county regulation under Local Government Code chapter 232.[1]

## I. Background

Your questions involve the relationship between chapter 232 of the Local Government Code and chapter 82 of the Property Code, the Uniform Condominium Act. Chapter 232, subchapter A generally requires the owner of a tract of land located outside the limits of a municipality to have a plat of the subdivision prepared if the owner divides the tract into two or more parts to lay out, among other things, a subdivision of the tract. *See* TEX. LOC. GOV'T CODE ANN. § 232.001(a)(1) (Vernon Supp. 2004). The commissioners court is authorized to approve or disapprove a plat based on whether it meets statutory requirements. *See id.* § 232.002. In addition, you indicate that Hays County falls within subchapter E of chapter 232, *see id.* § 232.100 (applicability), which governs subdivisions in urban and adjacent counties and generally authorizes the commissioners court in such a county to "adopt rules governing plats and subdivisions of land within the unincorporated area of the county to promote the health, safety, morals, or general welfare of the county and the safe, orderly, and healthful development of the unincorporated area of the county," *id.* § 232.101(a); *see also* Request Letter, *supra* note 1, at 1 (noting that Hays County is an "urban county").

Chapter 82 of the Property Code provides for ownership of land separately and commonly by condominium owners. Under chapter 82, a "condominium" means

a form of real property with portions of the real property designated for separate ownership or occupancy, and the remainder of the real

---

[1]Letter from Honorable Michael S. Wenk, Hays County Criminal District Attorney, to Honorable Greg Abbott, Texas Attorney General (Jan. 28, 2004) (on file with the Opinion Committee; *also available at* http://www.oag.state .tx.us) [hereinafter Request Letter].

property designated for common ownership or occupancy solely by the owners of those portions. Real property is a condominium only if one or more of the common elements are directly owned in undivided interests by the unit owners. Real property is not a condominium if all of the common elements are owned by a legal entity separate from the unit owners, such as a corporation, even if the separate legal entity is owned by the unit owners.

TEX. PROP. CODE ANN. § 82.003(a)(8) (Vernon 1995). A condominium is created "by recording a declaration executed in the same manner as a deed by all persons who have an interest in the real property . . . . The declaration shall be recorded in each county in which any portion of the condominium is located." *Id.* § 82.051(a); *see also id.* § 82.003(a)(11) ("'Declaration' means a recorded instrument, however denominated, that creates a condominium, and any recorded amendment to that instrument."). Chapter 82 also requires the filing of condominium plats and plans. *See id.* § 82.059(a) ("Plats and plans are a part of the declaration and may be recorded as a part of the declaration or separately."); *see also id.* § 82.003(a)(18) ("'Plan' means a dimensional drawing that is recordable in the real property records or the condominium plat records and that horizontally and vertically identifies or describes units and common elements that are contained in buildings."), (a)(19) (defining "plat").

You explain that Hays County regulates the subdivision of land in all unincorporated areas of Hays County pursuant to chapter 232. *See* Request Letter, *supra* note 1, at 1. The Hays County Environmental Health Department administers these regulations and seeks the commissioner court's approval of subdivision plats. *See id.* A developer in Hays County is proposing to develop a 12-acre parcel of land as a condominium governed by chapter 82 of the Property Code. *See id.* A brief submitted on behalf of the Hays County Commissioners Court describes the development as follows: "The proposed development comprises 17 condominium units . . . . None of the . . . units share any walls, foundations, roofs or structural elements and each . . . unit exclusively occupies the land on which it is located, similar to a typical single family residence."[2] It further states that each unit will be situated on a .13 acre parcel "that will be designated on the condominium declaration as a 'limited common element' reserved for the exclusive use and enjoyment of the owner of the condominium unit." *Id.*; *see also* TEX. PROP. CODE ANN. § 82.003(a)(17) (Vernon 1995) (defining "limited common element" to mean "a portion of the common elements allocated by the declaration or by operation of Section 82.052 for the exclusive use of one or more but less than all of the units").

Hays County has obtained a legal opinion concluding that the condominium development is a subdivision subject to regulation under chapter 232. *See* Request Letter, *supra* note 1, at 2; *see also id.* Exhibit B (brief from David B. Brooks (Dec. 1, 2003)). The developer, on the other hand, takes the position that "the development does not qualify as a 'subdivision' and is therefore exempt from development regulations." *Id.*; *see also id.* Exhibit C (brief from James M. Butler (Jan. 26, 2004)) [hereinafter Butler Brief]. The Hays County Commissioners Court has asked you to seek an

---

[2]Brief from Phillip H. Schmandt, McGinnis, Lochridge & Kilgore, L.L.P., to Honorable Greg Abbott, Texas Attorney General, at 2 (Apr. 27, 2004) (on file with the Opinion Committee).

opinion from this office clarifying whether chapter 232 applies to condominium developments. You ask us to address two issues:

1) Whether a condominium development pursuant to Chapter 82, Texas Property Code, is subject to the regulatory control of the county under the subdivision statutes contained in Chapter 232 of the Local Government Code?

2) Does Section 232.100, Texas Local Government, allow urban counties to require condominium or other multi-unit developments (a building, structure or combination of structures which have been designed to contain units in which more than two families may reside) to meet subdivision or infrastructure planning requirements?

Request Letter, *supra* note 1, at 2.

## II.    Analysis

### A.    Local Government Code Chapter 232, Subchapter A and Property Code Chapter 82

To answer your first question, we must determine whether a condominium development such as the one described above may be a "subdivision" within the meaning of Local Government Code, chapter 232, subchapter A. If we conclude that it may be, we then consider whether Property Code chapter 82 exempts a condominium from county regulation.

Section 232.001 of the Local Government Code establishes when a landowner must file a plat:

(a) The owner of a tract of land located outside the limits of a municipality must have a plat of the subdivision prepared if the owner divides the tract into two or more parts to lay out:

(1) a subdivision of the tract, including an addition;

(2) lots; or

(3) streets, alleys, squares, parks, or other parts of the tract intended to be dedicated to public use or for the use of purchasers or owners of lots fronting on or adjacent to the streets, alleys, squares, parks, or other parts.

(a-1)  A division of a tract under Subsection (a) includes a division regardless of whether it is made by using a metes and bounds description in a deed of conveyance or in a contract for a deed, by using a contract of sale or other executory contract to convey, or by using any other method.

TEX. LOC. GOV'T CODE ANN. § 232.001 (Vernon Supp. 2004).  In addition, section 232.0015 authorizes a county to define when plats are not required: "To determine whether specific divisions of land are required to be platted, a county may define and classify the divisions.  A county need not require platting for every division of land otherwise within the scope of this subchapter."  *Id.* 232.0015(a).  *See generally* Tex. Att'y Gen. Op. No. JC-0260 (2000) (concluding that section 232.0015(a) authorizes a county to "define and classify divisions" to except from the platting requirement particular subdivisions that would otherwise be subject to the requirement, even though the exception is not one listed in section 232.0015(b)-(k)).  Section 232.0015(b)-(k) excepts various subdivisions from the platting requirement, but neither the county nor the developer suggests that any one of those exceptions is relevant here.  *See* TEX. LOC. GOV'T CODE ANN. § 232.0015(b)-(k) (Vernon Supp. 2004).

Courts have broadly construed the term "subdivision" in section 232.001 and similar land regulation statutes.  In 1985, a court considered whether the statutory predecessors to section 232.001, former Revised Civil Statutes articles 6626a and 6702-1, required a landowner who intended to lease spaces on his land for mobile homes to file a plat.  *See Cowboy Country Estates v. Ellis County*, 692 S.W.2d 882 (Tex. App.–Waco 1985, no writ).  The landowner argued that the land in question did not constitute a "subdivision" within the statutes because the landowner "ha[d] no intention of selling lots, but only to lease spaces for mobile homes; that since the land [was] not being divided for purpose of sale, that it [was] not a 'subdivision' under these statutes."  *Id.* at 886.  The court disagreed:

> [T]he statutes concerned do not make any requirement that the lots be for fee simple purchases in order for a tract of land to be constituted as a subdivision.  The manifest overall purpose of the statutes concerned is to give counties the power to control subdivisions to protect its citizens in matters of public health and sanitation, drainage, and maintenance of public roads.  These public problems and concerns are just as great in the case of mobile home parks where the spaces are leased as in the case where lots are subdivided for purpose of sale.

*Id.* at 886-87.  Cases construing the term "subdivision" in statutes providing for municipal land use regulation also construe the term broadly.  *See City of Lucas v. N. Tex. Mun. Water Dist.*, 724 S.W.2d 811, 823 (Tex. App.–Dallas 1987, writ ref'd n.r.e.) (the term "subdivision" as used in former article 970a, section 4 "may be simply a division of a tract of land into smaller parts"); *City of Weslaco v. Carpenter*, 694 S.W.2d 601, 603 (Tex. App.–Corpus Christi 1985, writ ref'd n.r.e.) (the term "subdivision" as used in former article 970a, section 4 "may refer simply to the act of partition itself").  As one court stressed, "a subdivision of land, whether it refers to merely partitioning

property or instead refers to sales of residential sites involving separate owners, suggests development." *City of Weslaco*, 694 S.W.2d at 603.

By contrast, in *Elgin Bank of Texas v. Travis County*, 906 S.W.2d 120, 124 (Tex. App.–Austin 1995, writ denied), the court construed the section 232.001 platting requirement narrowly, holding that it did not apply to an owner who subdivides but who does not lay out streets, alleys, squares, parks, or other parts of the tract intended to be dedicated to public use or for the use of purchasers or owners of lots fronting on or adjacent to the streets, alleys, squares, parks, or other parts. The court relied in part on an opinion of this office, Attorney General Opinion JM-1100 (1989). *See id.* at 121. In 1999, the legislature amended section 232.001 and other subchapter A provisions to clarify the platting requirement's breadth and commissioners courts' authority to regulate subdivisions. *See* Act of May 5, 1999, 76th Leg., R.S., ch. 129, §§ 1-2, 1999 Tex. Gen. Laws 574, 575-76. Bill analyses for the 1999 legislation indicate that the legislature expressly intended to close the loophole in county subdivision authority created by the *Elgin Bank* construction of section 232.001.[3]

A brief for the developer asserts that "by its very definition, a condominium unit cannot exist on a subdivided tract of land," because owners of condominium units "retain an interest in the undivided common elements, that is, they own an undivided interest in land; not divided separate interests in land." Butler Brief, *supra* p. 2, at 3. We disagree that a condominium unit cannot exist on tract of land that is "subdivided" within the meaning of section 232.001 of the Local Government Code.

First, under the case law, how land is to be owned is not dispositive of whether a division of land constitutes a subdivision under section 232.001. In *Cowboy Country Estates*, 692 S.W.2d 882, the only case to address the meaning of the word "subdivision" in section 232.001 or its predecessors, the court concluded that the landowner planned to subdivide the land even though he would continue to own it in fee simple. *See id.* at 886 ("[T]he statutes concerned do not make any requirement that the lots be for fee simple purchases in order for a tract of land to be constituted as [a] subdivision."); *see also City of Weslaco*, 694 S.W.2d at 603 (rejecting landowner's contention that "the term 'subdivision' must be construed as requiring the land to be split into at least two different lots which are owned by different people"). Thus, land may be subdivided for purposes of section 232.001 even though the land is owned by a single owner or commonly owned by multiple owners.

Second, in *Cowboy Country Estates*, the landowner divided the land by leasing separate parcels as spaces for mobile homes. As the term is defined in the Property Code, a "condominium" also involves dividing property into separate parcels, *see* TEX. PROP. CODE ANN. § 82.003(a)(8) (Vernon 1995) ("'Condominium' means a form of real property *with portions of the real property*

---

[3]*See* SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSIS, Tex. S.B. 710, 76th Leg., R.S. (1999) (As Filed dated Mar. 22, 1999); SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSIS, Tex. S.B. 710, 76th Leg., R.S. (1999) (Comm. Rpt. dated Mar. 25, 1999); HOUSE COMM. ON LAND & RES. MGMT., BILL ANALYSIS, Tex. S.B. 710, 76th Leg., R.S. (1999) (Engrossed Version dated Apr. 22, 1999); SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSIS, Tex. S.B. 710, 76th Leg., R.S. (1999) (Enrolled Version dated July 6, 1999).

*designated for separate ownership or occupancy*, and the remainder of the real property designated for common ownership or occupancy solely by the owners of those portions . . . .") (emphasis added), including condominium "units," which are "physical portion[s] of the condominium designated for separate ownership or occupancy, the boundaries of which are described by the declaration," *id.* § 82.003(a)(23). Moreover, in the case of the proposed condominium development at issue here, units will be located on .13 acre parcels of land designated as "limited common elements," which are "portion[s] of the common elements allocated by the declaration or by operation of Section 82.052 for the exclusive use of one or more but less than all of the units." *Id.* § 82.003(a)(17). The developer's brief asserts that the designation of a unit for separate ownership is not the subdivision of land because "the underlying physical land will not and cannot be subdivided," Butler Brief, *supra* p. 2, at 4, but, again, land need not be separately owned in order to be subdivided under section 232.001. *See Cowboy Country Estates*, 692 S.W.2d 882. The seventeen .13 acre parcels, each reserved for the unit owner's exclusive use, are as much a division of land as the mobile home spaces at issue in *Cowboy Country Estates*. *See id.* at 885; *see also City of Weslaco*, 694 S.W.2d at 602 (concluding that plan to develop a 8.17 acre park by renting spaces for mobile homes and recreational vehicles constituted a subdivision of land). Accordingly, we conclude that section 232.001 authorizes a commissioners court to determine that such a condominium development constitutes a subdivision that must be platted.[4]

Having concluded that subchapter A authorizes a commissioners court to determine that a condominium development is a subdivision for which the landowner must prepare and file a plat, we consider whether chapter 82 of the Property Code, the Uniform Condominium Act, forecloses county regulation of condominium developments.

The developer's brief asserts that chapter 82 exclusively regulates condominiums and excepts condominiums from regulation under chapter 232 of the Local Government Code. *See* Butler Brief, *supra* p. 2, at 4. However, no provision in chapter 82 expressly states that a condominium is exempt from chapter 232 and several provisions indicate that the legislature did not intend to except a condominium from regulation as a subdivision under chapter 232. First, section 82.006 indicates that chapter 82 precludes a county or city from prohibiting or discriminating against condominium ownership. *See* TEX. PROP. CODE ANN. § 82.006 (Vernon 1995) ("A zoning, subdivision, building code, or other real property use law, ordinance, or regulation may not prohibit the condominium form of ownership or impose any requirement on a condominium that it would not impose on a physically identical development under a different form of ownership."). But the same provision expressly indicates that chapter 82 does not otherwise invalidate or modify subdivision laws or regulations: "Otherwise, this chapter does not invalidate or modify any provision of any zoning, *subdivision*, building code, or other real property use *law*, ordinance, or regulation." *Id.* (emphasis

---

[4]Section 232.021(11), cited as authority in a brief submitted to the county on behalf of the developer, is in Local Government Code chapter 232, subchapter B, which does not apply to the county. *See* Butler Brief, *supra* p. 2, at 2; *see also* TEX. LOC. GOV'T CODE ANN. § 232.022 (Vernon Supp. 2004) (applicability of subchapter B to county located near international border). We note, however, that this office has also broadly construed the meaning of the terms "subdivision" and "subdivide" in subchapter B. *See* Tex. Att'y Gen. Op. No. DM-485 (1998) (concluding that a residential lease used by a school district that conveyed to a teacher the right to occupy a manufactured home on a distinct tract of land divided the surface area of land).

added). Section 82.006 precludes a county from discriminating against condominiums but expressly preserves a county's authority to regulate them as subdivisions.

Second, chapter 82 defines the term "plat" to exclude Local Government Code chapter 232 subdivision plats:

> "Plat" means a survey recordable in the real property records or the condominium plat records and containing the information required by Section 82.059. *As used in this chapter, "plat" does not have the same meaning as "plat" in Chapter 212 or 232, Local Government Code, or other statutes dealing with municipal or county regulation of property development.*

*Id.* § 82.003(a)(19) (emphasis added); *see also id.* § 82.051(d) ("The book for the condominium plat records shall be the same size and type as the book for recording subdivision plats."). Thus, a condominium plat is legally distinct from a subdivision plat. Section 82.051(d) requires a county clerk to record condominium plats or plans in the real property records "without prior approval from any other authority." *Id.* § 82.051(d). Importantly, however, section 82.051(e) expressly provides that chapter 82 "does not affect or diminish the rights of municipalities and *counties to approve plats of subdivisions* and enforce building codes as may be authorized or required by law." *Id.* § 82.051(e) (emphasis added). Section 82.051(e) expressly preserves cities' and counties' rights to apply building codes and subdivision requirements to condominiums. Thus, while a commissioners court lacks the authority to approve a *condominium plat*, chapter 82 does not affect county authority to require or approve a *subdivision plat* for a condominium for which a subdivision plat is required under chapter 232 of the Local Government Code.

For these reasons, we conclude that chapter 82 does not prohibit a county from requiring a condominium development to file a plat under chapter 232, subchapter A.

## B.    Local Government Code Chapter 232, Subchapter E

You also ask us to address whether section 232.100 of the Local Government Code "allow[s] urban counties to require condominium or other multi-unit developments . . . to meet subdivision or infrastructure planning requirements." Request Letter, *supra* note 1, at 2.

Section 232.100 makes subchapter E applicable to certain urban counties and counties adjacent to them. *See* TEX. LOC. GOV'T CODE ANN. § 232.100 (Vernon Supp. 2004).[5] Section 232.101(a) provides subchapter E counties with broad authority to regulate subdivisions:

---

[5]Section 232.100 provides that subchapter E applies only to the subdivision in a county that "(A) has a population of 150,000 or more and is adjacent to an international border; (B) has a population of 700,000 or more; (C) is adjacent to a county with a population of 700,000 or more and is within the same metropolitan statistical area as that adjacent county, as designated by the United States Office of Management and Budget; or (D) is adjacent to a county with a population of 700,000 or more, is not within the same metropolitan statistical area as that adjacent county, and has a population that has increased after the 1990 decennial census, from one decennial census to the next, by more than 40 percent." TEX. LOC. GOV'T CODE ANN. § 232.100(2) (Vernon Supp. 2004).

> (a) By an order adopted and entered in the minutes of the commissioners court and after a notice is published in a newspaper of general circulation in the county, the commissioners court may adopt rules governing plats and subdivisions of land within the unincorporated area of the county to promote the health, safety, morals, or general welfare of the county and the safe, orderly, and healthful development of the unincorporated area of the county.

*Id.* § 232.101(a).[6] The legislature enacted subchapter E in 2001 to give affected counties greater authority to regulate subdivision infrastructure. As a bill analysis explains,

> Current law allows cities to make certain requirements in the development of infrastructure for subdivisions. No such provision exists for counties. S.B. 873 grants counties the authority to: adopt subdivision regulations, including lot size and setback limitations; enforce a major thoroughfare plan and establish right of way; require possession of a plat compliance certificate before utility hookups; and enact other regulations relevant to responsible development.[7]

In addition to the broad regulatory authority granted in section 232.101, sections 232.102 through 232.106 authorize counties to adopt various requirements. *See, e.g., id.* §§ 232.102 (major thoroughfare right-of-ways), .103 (lot frontages), .104 (set-backs).

You ask whether this regulatory authority applies to condominium developments or other multi-unit developments. The authority granted to a county to regulate subdivisions in section 232.101(a) applies to a subdivision of land subject to county regulation under subchapter A and is subject to the same exemptions provided in subchapter A in section 232.0015. *See id.* §§ 232.100(1) ("This subchapter applies only to the subdivision of the land that is [] subject to county regulations under Subchapter A or B."), 232.101(c) ("The authority granted under Subsection (a) is subject to the exemptions to plat requirements provided for in Section 232.0015."). Furthermore, section 232.107 expressly states that the authority granted to a county by subchapter E is "cumulative of and in addition to the authorities granted under this chapter and all other laws to counties to regulate the subdivision of land." *Id.* § 232.107. These provisions indicate that the legislature expressly intends subchapter E to add to a county's authority to regulate subdivisions subject to platting under

---

[6]*See also id.* § 232.101(b) ("Unless otherwise authorized by state law, a commissioners court shall not regulate under this section: (1) the use of any building or property for business, industrial, residential, or other purposes; (2) the bulk, height, or number of buildings constructed on a particular tract of land; (3) the size of a building that can be constructed on a particular tract of land, including without limitation and restriction on the ratio of building floor space to the land square footage; or (4) the number of residential units that can be built per acre of land.").

[7]SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSIS, Tex. S.B. 873, 77th Leg., R.S. (2001) (Enrolled Version dated June 5, 2001); *see also* SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSIS, Tex. S.B. 873, 77th Leg., R.S. (2001) (As Filed dated Mar. 15, 2001); SENATE COMM. ON INTERGOVERNMENTAL RELATIONS, BILL ANALYSIS, Tex. S.B. 873, 77th Leg., R.S. (2001) (Comm. Rpt. dated Mar. 28, 2001); HOUSE COMM. ON LAND & RES. MGMT., BILL ANALYSIS, Tex. S.B. 873, 77th Leg., R.S. (2001) (Comm. Rpt. dated Apr. 30, 2001).

subchapter A.  Thus, we conclude that the term "subdivision" has the same meaning in both subchapters and that subchapter E authorizes a county to further regulate a subdivision regulated under subchapter A.

In answer to your specific question, section 232.100 of the Local Government Code and the other provisions of subchapter E "allow urban counties to require condominium or other multi-unit developments" that are subject to subchapter A "to meet subdivision or infrastructure planning requirements." Request Letter, *supra* note 1, at 2.

## S U M M A R Y

Local Government Code chapter 232, subchapter A authorizes a county to determine that a condominium development is a subdivision of land for which the landowner must prepare and file a plat. Subchapter E of chapter 232 authorizes an urban county to regulate a condominium development that constitutes a subdivision under subchapter A.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee