# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00725-CV

**Phillip C. Watrous, Individually, and as Trustee Under the Watrous Family Living Trust, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT NO. D-1-GV-11-000858, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The State of Texas sued Phillip C. Watrous, individually and as trustee under the Watrous Family Living Trust (Watrous), alleging that he violated the Texas Local Government Code by failing to plat property located in Cameron County that he subdivided for residential use (the Property). *See* Tex. Loc. Gov't Code §§ 232.021-.043 (subdivision platting requirements for counties near international border). The State sought to permanently enjoin Watrous from subdividing, advertising, leasing, or selling the Property without approval by the Cameron County Commissioner's Court, and sought penalties for a continuing violation of the platting requirements. The trial court granted the State's motion for summary judgment, enjoining Watrous from advertising the sale or lease of mobile-home spaces on the Property or executing any new leases on the Property and requiring Watrous to timely plat the Property and obtain approval of the plat from the Cameron County Commissioner's Court. The court also awarded the State $464,500 in civil

penalties, along with attorney's fees and pre- and post-judgment interest. In two issues, Watrous

challenges the judgment on the grounds that (1) the State did not prove all essential elements of its

cause of action as a matter of law, and (2) genuine issues of material fact exist as to the size of the

Property and whether Watrous subdivided the Property before or after the effective date of the

relevant statutory provision. We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Viewing the evidence in the light most favorable to Watrous as the non-movant, the

record shows the following.[1] In 1979 Watrous acquired two lots located in Cameron County, Texas,

near Port Isabel but outside of that or any other municipality. By his affidavit, Watrous averred that

in 1980 and 1981 he "subdivided [the lots] into rental spaces for mobile homes." No formal plat

exists for this "subdivision" of the lots, and Watrous's affidavit does not state how many sub-lots

were created. Watrous obtained two building permits to construct a mobile-home subdivision on the

Property. Watrous apparently maintained the property as a mobile-home subdivision throughout the

80s and 90s. In 2006 Watrous conveyed the Property to the Watrous Family Living Trust, of which

Watrous was a trustee. On several occasions between 2004 and 2011, Watrous brought additional

mobile homes onto the Property, rearranged the placement of existing mobile-home units, and added

an unpaved entry road. From January 2010 until August 2012, Watrous also employed a property

---

[1] The standards for reviewing a summary judgment are well established and undisputed on appeal. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also* Tex. R. Civ. P. 166a(c). Accordingly, we need not repeat them here.

manager to collect rent from tenants at the Property who leased spaces for their mobile homes, which they used as residences. At no point during Watrous's ownership of the Property did he obtain plat approval from Cameron County for a new, expanded, or revised subdivision, nor did he seek or obtain such approval between the filing of suit and the granting of summary judgment.

The State sued Watrous for violations of the Texas Local Government Code, seeking civil penalties in the amount of $464,500 for continued violations of the statute, as well as injunctive relief and attorney's fees. The trial court granted summary judgment on those claims in the State's favor. On appeal, Watrous contends the trial court erroneously granted the State's motion for summary judgment because (1) the State did not prove all essential elements of its cause of action as a matter of law, and (2) fact issues exist as to the exact square footage of the Property and as to whether Watrous subdivided the Property before July 1, 1995, the relevant statute's effective date.

**DISCUSSION**

In its summary judgment motion, the State contended that Watrous's property was subject to chapter 232, subchapter B, of the Local Government Code because (1) Cameron County, the county in which the Property is located, is within 50 miles of the United States-Mexico border, (2) the Property was subdivided into two or more lots intended for residential use, and (3) the land is located outside corporate limits of surrounding municipalities. The requirements of subchapter B regarding subdivision platting in counties near an international border apply to property in "a county any part of which is located within 50 miles of an international border," and only to land that is "subdivided into two or more lots that are intended primarily for residential use in the jurisdiction of the county." *Id*. § 232.022. "A lot is presumed to be intended for residential use if the lot is five

3

acres or less." *Id.* The State's motion asserted that, by further subdividing the Property for residential use without obtaining approval of a plat and by leasing mobile-home lots on the property, Watrous violated sections 232.023(a), 232.024(a), and 232.031(a) of subchapter B as a matter of law, and was therefore subject to civil penalties under section 232.035(c).

### Did the State prove all essential elements of its cause of action as a matter of law?

In his first appellate issue, Watrous contends the State did not prove all the elements of its cause of action as a matter of law. In order to satisfy the elements of its cause of action against Watrous for violation of subchapter B, the State had to prove that:

(1) the Property is in the jurisdiction of a county located within 50 miles of an international border, *id.* § 232.022(a)(1);

(2) the Property is subdivided into two or more lots intended primarily for residential use, *id.* § 232.022(b);

(3) Watrous is a subdivider within the meaning of subchapter B, *id.* § 232.021(12); and

(4) Watrous did not have a plat of the subdivision prepared, *id.* § 232.023(a).

As to the first requirement, subchapter B applies to "a county any part of which is located within 50 miles of an international border." *Id.* § 232.022(a)(1). Within such counties, the statute applies to land located "in the jurisdiction of the county," meaning outside of any city limits. *Id.* § 232.022(c). The Watrous Property is located in Cameron County, which the trial court judicially noticed is located on the United States-Mexico border. The State also provided uncontroverted evidence in the form of an affidavit of a Geographic Information Systems Coordinator that the Property is outside the limits of any municipality. Therefore, the State

4

conclusively proved that the Property is within the jurisdiction of a border county within the meaning of subchapter B.

Regarding the second requirement, subchapter B applies "to land that is subdivided into two or more lots that are *intended primarily for residential use . . . .*" *Id.* § 232.022(b) (emphasis added). The State produced evidence in the form of aerial photographs maintained by Cameron County to demonstrate that Watrous had divided the Property into multiple lots intended for residential use. The photographs depict a single fixed structure and between one and three mobile homes on the Property at various times between 2004 and 2006, versus approximately 10 mobile-home units in 2011. The summary judgment evidence also showed that Watrous employed a property manager to collect rent from tenants of the Property from January 2010 to August 2012. The property manager confirmed in her affidavit that Watrous leased spaces to tenants who brought mobile homes to the property and that these tenants used the mobile homes as their residences.

Moreover, as the State points out, the entire Property is less than half an acre, triggering the statutory presumption of residential intent for lots less than five acres. Watrous did not produce any evidence to rebut this presumption. Thus, the State conclusively proved that the Property was effectively subdivided into lots intended for residential use.

Regarding the fourth requirement of the State's cause of action against Watrous for violation of the platting requirements of subchapter B, the Deputy County Clerk of Cameron County certified that she was unable to find any record of "a subdivision by Philip Watrous or Jeanie Watrous in Cameron County, Texas." This undisputed evidence shows that to the extent

5

Watrous subdivided the Property and leased lots for residential use, either before or after subchapter B's adoption in 1995, it was done informally and without filing a subdivision plat with the county as required by section 232.023(a).

The parties join issue primarily as to whether the State presented conclusive proof as to the third requirement. With regard to that requirement, at the time the State filed suit against Watrous, section 232.023(a) provided that a "subdivider of land must have a plat of the subdivision prepared." *Id*. § 232.023(a). A "subdivider" includes "any individual . . . that directly or indirectly subdivides land into lots for sale or lease as part of a common promotional plan in the ordinary course of business." *Id*. § 232.021(12). A "common promotional plan" is "any plan or scheme of operation undertaken by a single subdivider . . . either personally or through an agent, to offer for sale or lease lots when the land is contiguous or part of the same area of land." *Id*. § 232.021(2)(A). The term "subdivide" as defined by subchapter B means "to divide the surface area of land into lots intended primarily for residential use." *Id*. § 232.021(11). A "subdivision" is defined by subchapter B as "an area of land that has been subdivided into lots for sale or lease." *Id*. § 232.021(13). Subchapter B further provides that a "subdivision" for purposes of the plat requirement includes "a subdivision of real property by any method of conveyance, including a contract for deed, oral contract, contract for sale, or other type of executory contract, regardless of whether the subdivision is made by using a metes and bounds description." *Id*. § 232.023(a-1).

As the State points out, subchapter B's definition of subdivision is broad and does not require a formal legal description or survey. Similar land-use statutes have also broadly construed the term "subdivision." *See Cowboy Country Estates v. Ellis Cnty.*, 692 S.W.2d 882,

6

886-87 (Tex. App.—Waco 1985, no writ) (holding that subdivision was created by leasing multiple mobile homes); *see also City of Lucas v. North Tex. Mun. Water Dist.*, 724 S.W.2d 811, 823 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (term "subdivision" as used in former article 970a, section 4 "may be simply a division of a tract of land into smaller parts"); *City of Weslaco v. Carpenter*, 694 S.W.2d 601, 603 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e) (term "subdivision" as used in former article 970a, section 4 "may simply refer to the act of partition itself"); Tex. Att'y Gen. Op. No. GA-0223 (2004) (characterizing condominium development as subdivision).

The State demonstrated via uncontroverted evidence that Watrous acquired the Property in 1979 and conveyed it to the Watrous Family Living Trust in 2006. The State also proved that in approximately 2006, there were no more than three mobile homes on the Property. By 2011, however, there were 10 or 12, proving as a matter of law that Watrous had "resubdivided" the Property after June 16, 1995, when the statute became effective. The State also proved that Watrous employed a property manager to collect rent from tenants at the Property from January 2010 to August 2012. Furthermore, the State proved that Watrous advertised leases for mobile home lots via a sign at the entrance to the Property. Thus, the State fulfilled the third requirement of its cause of action against Watrous as a matter of law by conclusively proving that Watrous subdivided land into smaller lots for sale or lease as part of a common promotional plan in the ordinary course of business. Therefore, the State established all of the elements of its cause of action against Watrous as a matter of law. We overrule Watrous's first issue.

7

*Were any genuine issues of material fact in dispute?*

In his second appellate issue, Watrous asserts that a genuine issue of material fact exists regarding the size of the Property because the State, in its first amended petition, alleged that the Property was 17,750 square feet, whereas the State provided evidence in its motion for summary judgment that the Property was 19,650 square feet. Although Watrous argues that this discrepancy is pertinent to the analysis in this case, he fails to demonstrate its materiality. Under the facts of this case, the State did not need to prove the precise size of the land Watrous subdivided. The only instances in which property size is mentioned in the statute concern the presumption that properties under five acres are intended for residential use, Tex. Loc. Gov't Code § 232.022(b), and in an exemption from the platting requirements for subdivisions in which all of the lots are more than ten acres, *id*. § 232.022(d). The State's undisputed evidence from a 1931 map, however, showed that Watrous's entire Property was less than one acre.

Watrous contends that the Property may be as large as 50,000 square feet, but as the State points out, he fails to explain the legal effect of this fact. Even if the Property were 50,000 square feet, which is slightly more than one acre, it would still be far smaller than the 10-acre minimum for exemption from subchapter B, and it would still be presumed to be intended for residential use. *Id.* § 232.022(b). Therefore, any dispute about the size of the property does not, under these circumstances, create a genuine issue of material fact.

Watrous also argues that subchapter B is inapplicable because he obtained building permits from Cameron County in 1979 and subdivided the Property into spaces for lease as rental

8

spaces for mobile homes in 1980. As previously discussed, subchapter B stipulates that "a subdivider of land must have a plat of the subdivision prepared." *Id*. § 232.023.

Watrous argues that because he subdivided the property before June 16, 1995, when subchapter B went into effect, the Property is essentially grandfathered in. Therefore, he contends he was not required to seek approval of a plat from the Cameron County Commissioner's Court before leasing or selling residential lots. We disagree. Any fact issue regarding when Watrous originally subdivided the Property is not material because the lawsuit is about the post-1995 subdivision of the Property and not about any subdivision that may have existed before that time.

In the present case, the summary-judgment evidence demonstrates that Watrous added mobile homes and rearranged the orientation of mobile-home units on the Property several times between 2004 and 2011, in addition to adding an unpaved dirt road to the Property. We believe these aerial photographs taken and maintained by Cameron County, combined with the other summary judgment evidence, demonstrate as a matter of law that Watrous "subdivided" the Property within the meaning of subchapter B several times between 2004 and 2011, thereby shifting the summary judgment burden to Watrous to bring forth controverting evidence to raise a fact issue. *See Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989). Evidence that Watrous may have leased *some* mobile-home spaces before 1995 does not counter the evidence that he leased *additional* spaces—thereby effectively "resubdividing" the property—after 1995. We overrule Watrous's second issue.

**CONCLUSION**

Having concluded that the State proved all elements of its cause of action as a matter of law, we affirm the trial court's judgment.

_____
J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   July 30, 2014